The People, Etc., for use of G. W. Kennard,

*v.*

Henry C. Core *et al.*

1. Pleading—*waiver by pleading over.* If a plaintiff amends his declaration after a demurrer is sustained to the same, he thereby waives all objection to the decision of the court, and can not assign it for error.

2. Replevin—*affidavit.* The statute does not require the plaintiff in replevin to state the value of the property to be replevied, nor has it authorized the clerk to fix or certify its value to the sheriff.

3. Same—*sheriff should take a receipt.* Where property is replevied, the sheriff should take an inventory and invoice of its value, and a receipt from the plaintiff for the same, which he should return with his writ.

4. Sheriff—*liability for not taking sufficient replevin bond.* If the sheriff replevies property without taking a bond in a sufficient penalty to protect the defendant in case a return is awarded, he will be liable to the defendant, upon his official bond, to the extent of the damage sustained. He must ascertain the value of the property, independently of the affidavit of the plaintiff, and fix the amount of the bond accordingly.

Appeal from the Circuit Court of Champaign county; the Hon. C. B. Smith, Judge, presiding.

Mr. Thomas J. Smith, and Messrs. Somers & Wright, for the appellant.

Messrs. Sweet & Day, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

Suit was brought in the court below on the official bond of the sheriff of Champaign county, by Kennard, to recover for a loss claimed to have occurred by reason of the neglect of the sheriff to discharge his official duty. The delinquency averred is, that in replevying $2500 worth of goods from appellant, he took a replevin bond that was wholly insufficient, and appellant, by reason thereof, sustained that amount of loss.

The declaration contains one count, and it appears that Core and the other defendants executed the official bond of the

sheriff, and delivered the same, and a copy is set out *in hæc verba;* that at the time of its execution, Core had been elected sheriff of the county; that he was afterwards commissioned, and entered upon and continued to discharge the duties of his office.

It further appears, that on the 9th day of October, 1872, Wm. E. Howard sued out a writ of replevin from the office of the clerk of the circuit court of Champaign county, against appellant, and against certain of his goods and chattels, described as five boxes of dry goods, then in a railroad warehouse at Champaign, in that county, which boxes were marked with the name of G. W. Kennard; that the writ was delivered to Core, as sheriff, commanding him, if Howard should give him bond, with good and sufficient security in double the value of the goods, as required by law, to prosecute his suit to effect without delay, and make return of the goods, if return thereof should be awarded, and to save and keep the sheriff harmless, etc., then the sheriff cause the goods to be replevied and delivered to Wm. E. Howard, and that, by virtue of the writ, the sheriff did replevy and deliver the goods to him.

It further appears, that the sheriff did not take a bond from Howard in double the value of the goods replevied, with good and sufficient security, but took a bond only in the sum of $500; that after the return of the writ, with indorsement of the manner in which it was executed, such proceedings were had in the circuit court that a judgment was rendered awarding a return of the goods to Kennard, and that the goods and chattels, or any part of the same, have not been returned to him.

On a trial by the court and a jury, a verdict was returned in favor of the defendants, and after overruling a motion for a new trial, the court rendered judgment on the verdict, and plaintiff appeals to this court.

It is urged that the court erred in sustaining a demurrer to the declaration. Inasmuch as appellant amended his declaration, he thereby waived all objection to the decision of the court. Had he desired to raise any question as to the correct-

ness of the decision sustaining the demurrer, he should have abided by his declaration, and permitted judgment to be rendered against him on the demurrer. This is one of the plainest and most elementary rules of practice, and the objection is frivolous.

It is, however, urged, that the court erred in giving instructions on behalf of the defendants, and in refusing to give instructions asked by the plaintiff; also, that the jury found against the law and the evidence. The instructions asked and refused, present the question as to the duty of a sheriff in taking a replevin bond from the plaintiff before he seized and delivered the goods to him. Appellees contend that the sheriff was only bound to good faith and ordinary prudence in the performance of that duty, whilst appellant contends, that the sheriff was bound to a high degree of diligence, more than mere ordinary precaution, and that the evidence shows that he did not even exercise ordinary care, but was guilty of negligence in taking the bond.

The statute of 13 Edw. I, ch. 2, sec. 3, known as the Statute of Westminster 2, required the sheriff, before he executed the writ of replevin, to take from the plaintiff not only pledges to prosecute, but also to return the cattle, etc., and that if the sheriff took pledges in any other manner, he should be answerable for the price of the cattle, and the person who distrains shall recover by writ, that the sheriff shall render to him as many cattle, or goods. The 7 Hen. 8, ch. 4, sec. 3, and the 21 Hen. 8, chap. 19, sec. 3, provided that if the defendant succeeded, he should recover damages for the taking and detention of the property. Under these statutes, it was the practice, when the defendant recovered, to sue out a writ of *retorno habendo*, and a writ of inquiry as to the amount of damages, or the two might be embraced in one writ.

As, however, it sometimes happened that the plaintiff, after receiving the property, secreted or conveyed it to places where the sheriff could not find it, so it could not be returned by the sheriff, he made return of the fact. Thereupon, other writs issued, first against the plaintiff, then against the pledges who

had undertaken that the sheriff should make return; but, in case they all failed, then a *scire facias* was awarded against the sheriff that he render to the defendant as many cattle, etc. Afterwards, when the sheriff returned the writ of *retorno habendo* that the property had been secreted or removed, so he could not find it, the intermediate and circuitous proceedings were dispensed with, and it was held that the defendant might, under the Statute of Westminster 2, if the sheriff had taken no pledges, or such as were insufficient, bring an action against the sheriff.

These statutes seem to proceed upon the theory, that the sheriff took the bond for his own security and protection against loss. See 1 Saunders' R. 195, note 3; *Gibbs* v. *Bull*, 18 J. R. 435; *Ladd* v. *North*, 2 Mass. 514; *Concanur* v. *Sethbridge*, 2 H. Black. 36. In this last case, Lord LOUGHBOROUGH quotes from the Statute of Westminster 2, as follows: "He who delivered the goods was also to take pledges for the return of the beasts, or the price of them." And he also quotes from 2 Inst. 340: "That if he took insufficient pledges, they were no pledges within the statute, and the sheriff was charged by it as if he had taken no pledges at all."

The case of *Gibbs* v. *Bull*, *supra*, was under the fourth section of the New York act of replevin. It provides, that "the sheriff, before he makes deliverance of any beasts, goods or chattels, by virtue of any writ or plaint in replevin, shall take of the plaintiff sufficient security to prosecute the suit, and to return the same beasts, goods or chattels, if return thereof shall be adjudged; and if the sheriff shall take security otherwise, or neglect to take such security, he shall answer for the price or value of the beasts, goods or chattels." The court, in construing the statute, says, that "it seems to be a settled construction of this fourth section, that the sheriff may take such security as he pleases, in his own name and at his own peril."

It will be observed that the Statute of Westminster 2 and the New York statute are the same, and the tenth section of our statute is substantially the same. It, however, fixes the amount of the bond, and is, to that extent, different.

The twelfth section supplies the omitted portion of the English statute. It provides, that if the sheriff, etc., fails to take and return the bond, as required by the tenth section, or returns an insufficient bond, he shall be liable to the party injured for all damages he may sustain by reason of such neglect, which may be recovered in an action on the case. Thus it is seen that we have adopted the third section of the statute of Westminster 2, almost literally, with the construction placed upon it, that the sheriff may be sued in case, on a failure to perform this duty. In this case there is no pretense that the sheriff did. The bond is for but $500, and the value of the property was almost $2500.

But appellees claim, that if the officer acted in good faith, and there was nothing to excite his suspicion that Howard's affidavit was false, he should be protected. This is not a question of good faith, but a question whether the sheriff has performed his duty. Suppose an officer acts in good faith under circumstances that no prudent man of ordinary intelligence would regard as proper, would any person say in that case the officer should be justified? He must act with judgment and discretion in determining the manner in which he shall perform his duty. He has no right to substitute his belief of what is right, in opposition to the law, however good his intentions may be. The law has made him virtually the agent of both parties, and it has prescribed his duty whilst so acting, and he has no right to substitute his opinion, however honest, for the requirements of the law. It has spoken, and he must obey. The case of *The People* v. *Haines*, 5 Gilm. 528, is referred to, as sustaining this proposition. That case does place some stress upon the good faith of the officer; but from all that is there said, it will be seen that good faith avails nothing, unless the officer uses the best means of forming a correct opinion as to the value of the property. It is there said: "The requirement of the law is answered if the commissioner has availed himself of the best means of forming a correct opinion of the value of the property mortgaged, and believes that it is of the required value." Thus it is seen, in

that case the best means of forming a correct estimate of the value must be resorted to for the purpose; and when the officer is to be protected, according to that case, he must use the best means, which implies more than ordinary care and excludes all omission of duty.

The British statute required the sheriff to take sufficient security, without stating the amount, and left him to determine the amount, and if not in a sufficient amount then he was required to respond personally to the defendant for the loss; but our statute has provided that he shall be protected if the amount of the bond shall be double the value of the property. It thus limits his liability to that amount, and this amendment operates in his favor, and was not intended to increase his liability.

The thirteenth section of our statute, however, does limit such liability, as it provides, that the officer shall not be responsible, unless the bond was insufficient when it was taken. In adopting this enactment the General Assembly manifestly acted upon the supposition that where the sureties were solvent when the bond was entered into, and subsequently became insolvent, the officer would, under the tenth section, be liable for the loss; and the thirteenth section was, no doubt, adopted to relieve him of such liability.

Then, according to *The People* v. *Haines, supra,* did the sheriff use the best means of ascertaining the value, if the rule adopted in that should be applied to this case? We think not. When the law requires the officer to fix the value, it intends to clothe him with all reasonable and necessary power to ascertain the fact. We presume no one will doubt that the best means of ascertaining the value of the goods would have been, to call on the defendant and learn their value from invoices or otherwise. It is obvious that such evidence would be much better than the affidavit stating that the goods were worth the sum named, but stating nothing to negative the fact that they were worth more. The officer should have learned from Howard the sources of his information, and if not satisfactory, then he should have resorted to other means to learn

their value. The goods were in boxes and not open to inspection, and the officer had no right to suppose that Howard could, when they were in that condition, form a more accurate estimate of their value than he himself could.

Again, he could have called on appellant and demanded of him to open the boxes that the value of their contents might be ascertained, and had appellant refused, or he could not be seen, the sheriff then would have been justified in opening the boxes to ascertain their value by his own inspection, or that of others. He did none of these things, and appellant has been deprived of his property to the extent of almost five times the amount of the bond taken. Yet it is claimed that the sheriff acted with due caution and prudence in executing this writ. Moreover, it was his duty to have opened the boxes after he seized them, and made a list of the articles they contained, taken a receipt from the plaintiff therefor, and returned it with his writ. If he had done so, he would have at once seen the value was greatly larger than the penalty of the bond, and on learning that fact he should have refused to deliver them until a proper bond was executed. If a writ were sued out for the wagons and materials in a manufacturer's shop, it would strike every one that the return should show specifically what wagons and materials had been delivered to the plaintiff. So, if a writ were issued for the horses and carriages in a livery stable; and the same is true of the contents of these boxes.

No prudent man owning these goods, without knowing the contents of these boxes, would have sold them for the sum named in the bond, without examining and learning their value, even on the affidavit of a person not likely to have information of their worth, if he was of unquestioned veracity and business judgment. Nor can we believe the sheriff himself would have parted with them for such a price under such circumstances.

Even on appellees' theory, we think the sheriff did not exercise prudence or caution, but on the contrary was guilty of great want of care, and was highly negligent. The bond was insuffi-

cient when it was taken, and it was through the negligence of the sheriff that it was so; and, under the statute, he should be held for all damages that have resulted. The execution of such writs is something more than mere form. They involve the rights of the parties, and the law, no more than justice, can sanction the deprivation of those rights in a careless and negligent manner. Here, appellant has lost almost $2500, simply because the sheriff was regardless of his rights.

The statute has not required the plaintiff in replevin to make an affidavit of the value of the property, nor has it authorized the clerk to fix or certify its value. Hence the affidavit or the writ constituted no protection to the sheriff in receiving the bond. He might consider it in determining the value, but if made by a person having but slight, if any, means of knowing the value, he would not be justified in acting on it, but should resort to better sources of information. The officer must, under the law, learn its value as near as may be, and if fixed something too low, the bond, being in double the amount, secures the defendant. Even if the bond should be more than double the value of the property, it would be binding. Hence the officer has ample power to place it large enough to secure the defendant in his rights.

In so far as the instructions are not in harmony with the views here expressed, they should not have been given.

Inasmuch as the verdict is manifestly against the evidence, the judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*