## Clayton C. Pickett, et al., v. The People of the State of Illinois, for use of Margaret Adams.

### Gen. No. 11,315.

1. ASSIGNMENTS OF ERROR—*when, deemed waived.* Assignments of error not argued are deemed waived.

2. REPLEVIN BOND—*duty of constable in taking.* A constable in taking a replevin bond is required, among other things, to use the best means of forming a correct estimate of the value of the property sought to be replevied, and the law in requiring him to ascertain such value clothes him with all reasonably necessary power, and if he neglects his duty in the premises he and his sureties upon his official bond are liable.

3. REPLEVIN BOND—*when constable does not perform his duty in taking.* A constable in taking a replevin bond must not rely upon the statement contained in the affidavit for replevin; nor should he take and approve such a bond without attempting to ascertain the value of the property sought to be replevied.

Pickett v. The People.

4. Action of debt—*form of verdict and judgment in.* In an action of debt upon a penal bond the verdict should find the amount of the debt and damages separately, and the judgment in such case should be for the debt, to be discharged on the payment of the damages sustained, but an error with respect to the form of such a verdict is technical and will not reverse.

Action of debt upon official bond. Error to the Circuit Court of Cook County; the Hon. Joseph P. Robarts, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed May 26, 1904.

Walter G. Kraft, for plaintiffs in error.

Lyman M. Paine, for defendant in error.

Mr. Presiding Justice Adams delivered the opinion of the court.

This is an appeal from a judgment for the sum of $600, rendered in an action of debt by defendant in error against plaintiffs in error. The suit was on the official bond of Clayton C. Pickett as constable, against him and his sureties on the bond. The bond sued on is in the penalty of $10,000, and is conditioned that "the said Clayton C. Pickett shall faithfully discharge the duties of his office as constable," etc. No question is raised by counsel in respect to the pleadings, which are quite voluminous, and we do not think it necessary to refer to them specifically. It appears from the evidence that Margaret Adams, being the owner of certain goods and chattels, which she used in carrying on the laundry business in the city of Chicago, sold the same to Frederica Chamberlain, for the sum of $950, $250 of which was paid in cash, and notes given for the balance of $700. There were thirteen notes in all. Six of them were for $20 each, were dated January 21, 1898, and were due, respectively, in one, two, three, four, five and six months after date. To secure payment of the notes Mrs. Chamberlain executed to Mrs. Adams a chattel mortgage of the articles sold. When the first note fell due Mrs. Adams demanded payment of it, which was refused, and she took possession of the mortgaged property and placed a custodian in possession. March 2, 1898, Frederica Chamberlain sued

out a writ of replevin against Margaret Adams, John Adams, her son, and M. F. Barrett, before D. J. Lyon, a justice of the peace. The complaint on which the writ was issued was made by John Chamberlain, Mrs. Chamberlain's husband, as agent for Frederica, and it is stated therein "that the said goods and chattels are of the value of two hundred dollars." The writ was delivered to constable Clayton C. Pickett for service, and he took a bond from Frederica Chamberlain, with S. A. DeBolt and Charles T. Palmer as sureties, in the penal sum of $400. The bond is in the usual form of replevin bonds. March 2, 1898, Pickett took the property on the writ and delivered it to Frederica Chamberlain, the plaintiff in the replevin suit. Subsequently such proceedings were had in the suit before Justice Lyon, that on hearing of the cause, the justice found property in the defendant, Mrs. Adams, and gave judgment against the plaintiffs for costs, and that a writ *retorno de habendo* issue. The plaintiffs appealed to the County Court, and such proceedings were had in the matter of the appeal that, January 12, 1899, the appeal was dismissed for want of prosecution, at plaintiffs' costs with *procedendo*.

The chief contention of the defendant in error, on the trial, was that constable Pickett was guilty of negligence in taking bond in a penal sum much less than the value of the property replevied, and the evidence was mainly as to the value of the property. The financial ability of the sureties on the replevin bond is not questioned. The only propositions argued by counsel for plaintiffs in error are, that it is not shown by a preponderance of the evidence that the property exceeded in value $200; that the verdict of the jury is erroneous in form, and that the court erred in giving improper instructions to the jury on behalf of the plaintiff, and in refusing to give some, and modifying others, asked by the defendants. All questions not argued must be deemed waived. Gordon v. Commissioners, etc., 169 Ill. 510; Keyes v. Kimmel, 186 Ill. 109.

It appears from the evidence that January 21, 1898, Mrs. Adams sold to Frederica Chamberlain the property in

Pickett v. The People.

question for the sum of $950, $250 of which was paid by Frederica in cash, and notes were given for the balance, to secure which notes Frederica executed to Mrs. Adams a chattel mortgage of the property.    It further appears from the evidence that the property was purchased by Mrs. Adams about a year before the sale by her to Mrs. Chamberlain, during which time the laundry in which the property was being used was carried on by her son, John Adams.    He testified that the property cost Mrs. Adams $1,500, and that it was worth, at the time it was replevied, about $1,200, and was then in first-class condition.    On cross-examination this witness testified that part of the property was purchased from one Kipp, for which about $900 was paid to Kipp.    Charles W. Lynn testified that he had been in the laundry business more than ten years, and had had occasion to buy laundry machinery; that he had heard the testimony describing the contents of Mrs. Adams' laundry, and that a complete laundry such as described was worth, March 2, 1898, about $600.    The foregoing evidence was offered by the defendant in error.

On behalf of plaintiffs in error, Charles H. Kipp testified that the value of the machinery in the laundry March 2, 1898, was $150 or $160.    It appears from the evidence of this witness, on cross-examination, that he sold the laundry machinery and appliances, set up and in running order, to Mrs. Adams for $600.    This did not include two horses and two laundry wagons which were replevied, and which the evidence shows were worth $125; nor did it include a body ironer.    He also testified that his estimate of the value of the machinery was, as a whole, set up and in running order, the same as he sold it to Mrs. Adams, but that, to him, the property, on the sidewalk, was not worth over $150 or $160.    The witness was asked whether he had not told John Adams or his mother that the property had been sold too cheap to Mrs. Chamberlain, and he said he had no recollection of so stating.    Dawson, witness for plaintiffs in error, testified that he was acquainted with the contents of the laundry March 2, 1898, and that the fair value of the

machinery then was $150. John Chamberlain, husband of Frederica, testified that he had been in the laundry business over fourteen years; that he helped his wife to purchase the laundry machinery in question, and that March 2, 1898, it was worth about $150 or $160. Witness attempts to explain the discrepancy between these sums and the purchase price by saying that the sale to Mrs. Chamberlain included the good will of the business.

John and William Adams testified that Kipp had something to do with selling the laundry to Mrs. Chamberlain, and that they both heard him say that he had sold the laundry; that his fee was $100, but that, on account of Mrs. Adams having sold it so cheap, he would take $5, and that he received that sum for his services in making the sale. Defendant in error also put in evidence in rebuttal a written proposal of C. H. Kipp to Mrs. Adams to furnish machinery and appliances for the laundry, containing prices by items, the total amount of which prices is $653, and which was the basis of the contract between Kipp and Mrs. Adams. This proposal does not include all the property in question. If the testimony of Kipp is to be credited, he swindled Mrs. Adams when he charged her $600 for the machinery, etc., which he sold to her, and he helped Mrs. Adams to swindle Mrs. Chamberlain, in selling the outfit to her for $950. The testimony of John Chamberlain that the laundry property was not worth more than $150, in the laundry, March 2, 1898, which he had assisted his wife to purchase January 21, 1898, for the sum of $950, is, in view of his experience in the laundry business and his knowledge of the value of laundry machinery (as testified to by him), little short of absurd. We think the jury was fully warranted by the evidence in finding that the value of the property was largely in excess of $200. The jury assessed the damages at $856.04, from which the defendant in error remitted $256.04, and judgment was rendered for the residue. It appears from the evidence of plaintiff in error, Clayton C. Pickett, that he took and approved the replevin bond before endeavoring, in any way, to ascertain the value

of the property to be replevied.  We quote from the abstract: " From the investigations made regarding these sureties, 1 believed they were amply sufficient.  After making these inquiries, I approved the bond and went to serve the writ.  At the laundry 1 met Mr. Chamberlain, and asked him what the things were worth.  He stated about $150 to $175, somewhere along there.  In order to further satisfy myself, I sent for Mr. Kipp, and he came and looked the property over, and stated that it was worth about $150, but he wouldn't give that much for it.  I then took possession on the writ and turned over the goods to Mrs. Chamberlain, the plaintiff in the writ."  After the property was turned over to Mrs. Chamberlain it was removed from the laundry and so disposed of that it was wholly lost to Mrs. Adams.

We think it rather a singular proceeding to inquire of Chamberlain, who, as the writ in Pickett's hands showed, was the agent of the plaintiff, and made the complaint, deposing that the property was "of the value of two hundred dollars," and who, as Pickett must have known, was the plaintiff's husband.  An officer in such case is required to use the best means of forming a correct estimate of the value of the property, and the law, in requiring him to ascertain the value, clothes him with all reasonable and necessary power to do so, and if he neglects his duty in the premises, he and the sureties on his official bond are liable.  People, use, etc., v. Core, 85 Ill. 248.

In the present case Pickett took and approved the bond before making any attempt to ascertain the value of the property.  He could not rely on the value stated in the complaint and writ.  People v. Core, *supra.*  This was negligence.  He might have inquired of Mrs. Adams, the defendant in the writ, or of her son, from whom he would have learned, at least, the cost of the property.  We think the jury fully justified by the evidence in finding him negligent in the matter.  The verdict was:  "We, the jury, find the issues for the plaintiff and assess the plaintiff's damages at the sum of $856.04."  The action being debt on

a penal bond, the verdict should have found the amount of the debt and damages separately, and the judgment in such case should be for the debt, to be discharged on payment of the damages assessed. Freeman v. The People, 54 Ill. 153. The error, however, is technical and formal, and not such as to warrant reversal of the judgment. Italian S. Ag. Co. v. Pease, 194 Ill. 98, 108.

- .We have carefully considered all objections of counsel for plaintiffs in error to the giving, refusing and modification of instructions, and find no reversible error in respect to the instructions. The instructions given, considered together and as a series, state the law substantially correctly. We are of opinion, from inspection of the entire record, that substantial justice has been done between the parties, and the judgment will be affirmed.

*Affirmed.*