David B. Long, Appellant, v. William T. Burnside, Appellee.

Gen. No. 9,070.

filed April 20, 1938.

COTTON & NICHOLS, of Paris, for appellant.

CRAIG & CRAIG, of Danville, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

Plaintiff appellant, David B. Long, filed a complaint in the circuit court of Edgar county, consisting of three counts, the first two of which charge that the defendant appellee, William T. Burnside, unlawfully took and detained certain of the property of the plaintiff, of the value of $250, consisting of 362 fence posts. The third count is in trover for the unlawful conversion of said property. The answer filed by the defendant, William T. Burnside, is a denial of the allegations of each count. A writ of replevin was issued, and, from the return of the sheriff thereon, it appears that it was duly served upon the defendant, and the sheriff seized the property named in the writ.

It appears, that in 1919 the appellant, Long, purchased a farm of 108 acres and executed two trust deeds, one securing the payment of $10,000 and the other the sum of $1,500, both of which were held by Katherine and John Postner who resided in the State of Ohio. Long defaulted upon the interest payments from September, 1929, to September, 1932. On Sep-

tember 6, 1932, appellant conveyed the mortgaged premises to the Postners, which was accepted by them in full satisfaction of the mortgaged indebtedness, and the trust deeds were released and the notes secured thereby canceled and surrendered to appellant, Long. On August 1, 1935, the Postners deeded said premises to appellee, Burnside.

A jury was waived and the case was tried by the court who found the issues for the defendant and against plaintiff in bar of the action, and that the plaintiff was not entitled to the possession of the property and entered judgment that defendant have and recover of and from the plaintiff judgment in bar of his action together with the costs.

At the time appellant, Long, acquired title to the real estate in question there was a large number of hedge trees on said land, which trees surrounded an orchard of some two acres. From time to time, beginning in 1927 or 1928, appellant cut certain of these hedge trees and made them up into posts. The time at which these trees were cut and converted into posts is a disputed fact in the record.

Appellant relies upon several grounds for a reversal of the judgment, among which are that the judgment of the court is contrary to the law and the evidence, and that both the title and the possession of the posts were vested in the plaintiff, and that the trial court erred in not so finding. Appellee, to sustain his judgment, points out that the posts were not cut until after the conveyance by appellant to the Postners, that appellant had no title or right of possession thereto at the time of the suit; that if the posts were cut before said conveyance appellant had no lawful title thereto and was not lawfully entitled to possession thereof at the time of the suit because his alleged title or right to possession is based upon fraud.

From the evidence it appears that the posts in question were cut at different times, over a period of about

10 years, and that all of them were cut prior to September 6, 1932. Appellant and one Sam Bates were farming the place in partnership for about three years prior to the time appellant deeded the place to the Postners. After Postners acquired the place Mr. Bates continued on the farm until March 1, 1936. Appellant had an agreement with Bates about leaving the posts on the place, and some lumber in the barn and part of the machinery that Bates had, that belonged to Long. When Bates was going to move Long went to see Mr. Burnside and told him he would get his things off of the place, and mentioned the posts; and he asked, what posts, and Long told him about them, and Burnside said not to move the posts.

It is insisted by appellee that the circuit court found the posts were cut after Long had conveyed the premises to Postners, when they did not belong to Long. He says that the statements contained in appellant's brief, ''that the trial judge, in his decision, stated that a preponderance of the evidence indicated that the posts and trees were severed prior to the date of the conveyance from Long to Postners, and that there can be no dispute about the facts, and this was conceded by the trial judge,'' are wholly unsupported by the record, no such statements by the trial judge of the reasons for his decision having been included in the report of proceedings. While it is true that the report of proceedings does not show that any such statement was made by the trial judge, we can hardly believe that the trial judge found from the evidence that the posts were not severed from the land prior to the date of the conveyance of the same to the Postners, because the overwhelming weight of the evidence is contrary to such a finding.

The uncontradicted evidence of the witnesses, Long, the plaintiff, and Sam Bates, his partner in the farming operation for three years prior to the time the land was deeded to the Postners, and Charles Bates, the son

of Sam Bates who resided with him, establishes the fact that they all helped cut the posts at different times prior to September 6, 1932, covering a period of several years; and Mr. Bates testified the posts were there on the place when he left it, about March 1, 1936.

T. D. Reynolds, a farm manager for the Nelson Title Co., of Paris, Illinois, took charge of the farm for the Postners, and in November, 1932, he, with the Postners, went upon the land, and he testified that he found the hedge cut on the east and south sides, and that he did not see any posts and did not look for them. He testified that he thought most of the posts were cut in March, 1933. The testimony of this witness has but little weight when compared with the testimony of the witnesses who actually cut the posts and were paid by Long for so doing. If the trial court in its decision of the case found that the posts were cut and severed from the land after September 6, 1932, such finding is contrary to the manifest weight of the evidence in the record.

Appellee also says in his brief that plaintiff must recover on the strength of his own title and not upon the weakness of the title of defendant, and that replevin can be maintained only by the person who is the owner of the property or is entitled to the possession thereof, and cites and quotes quite extensively from a number of authorities. No one would question but that such is the law and so recognized by every one.

It is also insisted that even if it should be held that the posts were cut by Long before the deed by him to the Postners, he still did not have a good title, nor did he have lawful right to possession, as his claim cannot be based upon fraud. We fail to find in the record any evidence of fraud that would defeat appellant's lawful right to possession of title to the property in question, even conceding that if Long had defrauded the Postners, appellee could defend on such grounds.

Appellee claims that appellant finally deeded the farm to the Postners in satisfaction of the mortgaged indebtedness, without letting them know that he had cut the posts or that he claimed, or intended to claim, ownership of the posts, but wrongfully concealed this fact. We are unable to find any evidence in the record to substantiate any such claim. There is no evidence in the record as to any negotiations or agreement that was entered into leading up to the deeding of the land to the mortgagees in satisfaction of the debt. There can be nothing in the contention that Long's claim was based upon fraud. It is also contended that if appellant had any title to the posts he is estopped from setting the same up because it is based on fraud. We fail to see that appellee is in a position to invoke the doctrine of estoppel as he is not the owner of the posts and only prevented the removal of them from the farm, according to his own statement, because Long had plenty of time to move the posts and hadn't done so and he had bought the place and that Long had not moved them and should not now.

It is also contended that the mortgage conveyed the growing timber and that after default the mortgagor had no right to cut it, and that the cutting of the timber may be restrained by injunction, and that, if he sells the timber he has cut, it does not divest the lien of the mortgage, all of which is quite true as between mortgagee and the mortgagor. It is also argued that when the Postners accepted the deed to the land in satisfaction of the mortgage indebtedness they were entitled to and expected to receive all of the property covered by the terms of the mortgage, which included not only the land but the posts which had grown on the land. That if Postners had known of the cutting of the timber, they could have protected their rights by suit, by injunction, but not knowing the same they were misled to their detriment. There is no testimony in

the record from which the foregoing facts could be inferred. If all of this were true, it could have been made to appear by the testimony of the Postners.

Counsel for appellee further argue the supposed fraud of appellant and charge that he owed a duty to the Postners, when he negotiated with them for settlement of the mortgaged indebtedness by the conveyance of the land, to disclose to them the fact that he had cut these posts and diminished their security.

The evidence discloses that on September 6, 1932, appellant conveyed the farm to them and they accepted it and released the mortgages and returned the notes canceled, and there is no evidence but that they knew fully what they were getting by the deed, and so far as this record is concerned they have never complained to any one about the posts, and did not at the time, and never have made any claim to the posts. As far as appellee is concerned it does not concern him in the least, if the Postners were defrauded. The entire argument of appellee, as far as it concerns the claim of fraud, is not based upon any evidence in the record, but upon their theory that something might have happened of which there is no evidence.

Long was the owner of the farm and rightfully in the possession of the same, and had absolute control over the same until entry was made for some conditions in the terms of the mortgage, that were broken, or some proceeding was instituted to prevent waste, or other remedy was exercised by the mortgagee. His title was absolute, subject only to the liens of the mortgages to the Postners, and when the mortgages were released, the lien thereof was discharged as to the entire premises, including any posts that may have been previously severed from the soil.

The cases cited by appellee, including *Hutchins v. King,* 1 Wall. (U. S.) 53, and *Dorr v. Dudderar,* 88 Ill. 107, have no bearing on the issues herein involved as

they are simply illustrative of what steps the Postners could have taken had they considered that appellant was committing waste, but having accepted the deed to the farm and returned the mortgages and the notes canceled, they could not invoke any such remedies. There could have been no fraud or misrepresentation as the farm was there, with the timber that was left on it, and an inspection of the land would have disclosed that some of the timber had been severed, and under those circumstances they are presumed to have known what was obvious from an inspection of the premises.

Long conveyed the farm to the Postners on September 6, 1932, and they owned it until the fall of 1935, when it was deeded to Burnside. Conceding that the posts were cut in March, 1933, the time the witness Reynolds testified, ''I think most of the posts were cut in March, 1933,'' the latest date that any witness fixed as the time when the posts were cut and severed from the land, even then appellant could recover. Postners were the owners of the farm at that time, and there is not the remotest chance that the posts were cut after Burnside acquired the title. If cut in 1933 Postners would have an action of trespass against Long. Not even the appellee contends that the conveyance of the farm to him carried with it the title to the posts in question. It has long been the settled law in this State that even a trespasser can assert title as against all except the owner.

In the case of *Wincher v. Shrewsbury,* 2 Scam. 283, Shrewsbury brought an action in trespass against Wincher to recover damages for the conversion of certain rails and sawed timbers. Shrewsbury had gone upon a tract of land belonging to the United States Government and made 1,060 rails and cut and sawed timber. They were laying in piles through the woods, and, while thus situated on the land, Wincher entered

and purchased the land of the United States and paid for it. He prohibited Shrewsbury from taking this timber off of his land and hauled the rails and timber away. Judgment was rendered in favor of Shrewsbury. In its opinion the court said: "I have no doubt of the plaintiff's right of recovery against the defendant. It is true, that the wrongful taking or conversion of the property of another does not give the trespasser a title, as against the owner, who may follow and recover it as long as it can be identified. But this rule applies only to the owner of the property taken, and not to a stranger. . . . At the time the trespass was committed by the plaintiff, the land, and consequently the timber growing on it, of which the rails were made, belonged to the government. The cutting of the timber was therefore an injury and trespass against the government; and it had a legal remedy. Therefore the defendant had neither a right of property, nor a right of action, at the time of the plaintiff's trespass, in making the rails. . . . A certificate of purchase or patent vests in the patentee a title to the land, and generally all that is growing on, or is in the contemplation of law attached to the land,—as houses, fences, growing timber, grain, etc.; and it is said that fallen timber passes with the land. But that which has been severed from the land, and, by the art and labor of man, converted into personal property, . . . does not pass with it, any more than the grain, grass, or fruit which has grown upon, and been gathered from it."

Also in *Brown v. Throckmorton,* 11 Ill. 529, under similar circumstances, the case of *Wincher v. Shrewsbury, supra,* was affirmed. In this case Throckmorton, during the winter of 1844, made rails from timber cut by him on land belonging to the United States Government, and Brown took and carried them away. The defendants offered to prove that Brown was entitled to and claimed pre-emption on this land; but the court rejected the offered evidence. The Supreme Court in

its opinion said: "The evidence admitted showed a *prima facie* right in the plaintiff to recover the value of the rails; and the evidence offered by the defendants, and excluded by the court, neither tended to rebut the case thus made, nor establish any defence to the action. The timber out of which the rails were made belonged to the United States and not to Brown. Admitting that Brown had at the time a valid pre-emption, that did not confer on him any title to the land or the timber standing thereon, he had, at most, but a license from the government to occupy the land and the right to purchase the same within a specified time, at the minimum price. On the entry of the land, he acquired no interest in the rails previously made by the plaintiff thereon. The timber was severed from the freehold, and became personal property, and did not pass with the land to Brown by the grant from the United States."

It will be seen that Long not only had title to the posts in question, but was also entitled to the possession thereof as against Burnside, and Burnside had no legal right to withhold the posts from Long. The circuit court was in error when it found that the issues for the defendant and entered a judgment in bar of the action of Long.

The judgment of the circuit court of Edgar county is reversed and the cause remanded with directions to enter judgment for appellant, David B. Long, and for such damages as he may have sustained while the property was wrongfully detained by appellee, William T. Burnside, and if the sheriff who seized the property on the writ of replevin still has the possession of the same, that he be directed to turn the same over to appellant.

The return of the sheriff on the writ of replevin and the record are silent as to what disposition was made of the property, and the court did not order plaintiff to return the same to Burnside in the judgment entered. The return should show fully how the writ was exe-

cuted, and if the property was delivered to the plaintiff the sheriff should take his receipt for the same and return it with the writ. *People v. Core,* 85 Ill. 248.

We find that the hedge trees from which the posts were made were severed from the soil of the premises in question prior to September 6, 1932.

*Reversed and remanded with directions.*