HUNTER W. FINCH & Co., Appellee, *vs.* THE ZENITH FURNACE COMPANY, Appellant.

*Opinion filed June 29, 1910—Rehearing denied October 6, 1910.*

1. PRACTICE—*when bill of exceptions must be taken.* A bill of exceptions must be taken at the term when the rulings excepted to are made, or within such time as the court may at that term grant for the purpose.

2. SAME—*cross-errors are not necessary to raise question as to what is a proper part of record.* Cross-errors are not necessary in order to entitle an appellee to raise the question as to what is a proper part of the record in the cause, and it is proper to have such question determined on a motion to expunge the portion of the bill of exceptions claimed to have been improperly made a part of the record.

3. PLEADING—*when the right to question ruling on demurrer is waived.* Where a defendant fails to stand by a plea after a demurrer thereto is sustained but takes leave to plead over and files another plea, the right to question the ruling on the demurrer to the former plea is waived.

4. SAME—*plea amounting merely to general issue, also filed, is open to demurrer.*  A plea filed under leave after the general issue is filed, and which merely amounts. to the general issue, is .open to demurrer on that ground.

5. CORPORATIONS—*when foreign corporation law has no application.*  The statute requiring a foreign corporation to comply with certain provisions before it is entitled to transact in Illinois the business for which the corporation was organized has no reference to a resort by such a corporation to the courts of Illinois to recover a contract liability.

6. SAME—*when debt due foreign corporation may be reached by garnishment.*  A debt due a foreign corporation may be reached by garnishment under the Attachment act even though the corporation has not complied with the foreign corporation law and has no agent in Illinois, where the corporation voluntarily appears and files a plea of the general issue and where the debtor is subject to process of the courts of Illinois.

7. CONTRACTS—*when a coal contract sufficiently fixes the quantity to be delivered.*  A contract whereby the vendor agrees to sell and the vendee agrees to buy estimated tonnage of 50,000 tons of Ella coal, is an agreement for a practically definite amount of coal to be delivered by vendor and which vendee is bound to take..

8. SAME—*when contract made by foreign corporation is void.*  If a contract made by a foreign corporation is unlawful under the statute it is void, even though the statute does not declare the contract to be void but only imposes a fine upon the foreign corporation and denies it the right to maintain any suit or action in the courts of the State.

9. SAME—*when contract by foreign corporation does not violate the statute.*  A statute prohibiting a foreign corporation from transacting business, holding or disposing of property or maintaining any suits in the courts of the State unless it shall have complied with certain requirements, is not violated by the making of a single contract for the purchase of movable personal property, such as coal, and authorizing its delivery to a partnership located in the State.

10. SAME—*when a contract is not ultra vires.*  A corporation having power, under its charter, to mine coal has the incidental power to sell it, and a contract for the sale of coal is not, therefore, *ultra vires* the corporation. ·

11. COMITY—*when comity does not require court to turn suitor away.*  The comity between States does not require the courts of one State to turn a citizen thereof away who has a good cause of

action under the laws of such State merely because he could not maintain an action in another State.

12. EVIDENCE—*when refusal to allow oral evidence as to ambiguities is proper.* A refusal to allow oral evidence concerning alleged ambiguities in a contract is proper, where there was no misunderstanding between the parties about the terms and no dispute whatever as to what the contract meant.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

KNAPP & CAMPBELL, and MARK BREEDEN, JR., for appellant.

NICHOLAS W. HACKER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, a corporation of this State, brought this action of assumpsit by attachment against the appellant, a corporation of the State of Minnesota, in the superior court of Cook county, and a debtor of the defendant was summoned as garnishee. The defendant was served by publication and appeared and filed a plea of the general issue and entered into a recognizance in accordance with the Attachment act, conditioned for the payment of any judgment and costs that might be rendered, whereupon the attachment was dissolved and the garnishee discharged. The declaration contained three counts, alleging a failure of the defendant to perform a contract in writing dated May 2, 1905, by which it agreed to sell, and the plaintiff agreed to buy, estimated tonnage of 50,000 tons of Ella coal to be loaded at the defendant's docks, which were at Duluth, Minnesota, and the coal to be taken through the year ending March 31, 1906, in as nearly monthly installments as market conditions would permit. When the agreed selling price

of Youghiogheny lump coal at the docks was three dollars a commission of ten cents per ton was to be paid to the plaintiff, and thereafter any premium obtained above three dollars for the coal was to be divided, three-fifths to the defendant and two-fifths to the plaintiff. The contract was subject to strikes, shortage of cars or other conditions beyond the control of the parties and the cars were to be supplied by the defendant. After filing the plea of the general issue the defendant obtained leave to file an additional plea, which was demurred to and the demurrer was confessed and leave was given to file a third plea instanter. Under that leave a plea was filed setting up a failure of the plaintiff to comply with the laws of this State relating to foreign corporations doing business in this State, and a like failure of the plaintiff to comply with statutes of Minnesota requiring certain things to be done by foreign corporations doing business in that State. This plea was demurred to and the demurrer was sustained by the court. The defendant then obtained leave to file a further plea, and did so, setting out the contract in the plea, averring performance and setting up a shortage of cars as a reason for not delivering the full amount. The court sustained a demurrer to this plea, which set up, among other things, that the matters of defense sought to be availed of, if otherwise admissible, would be admissible under the general issue. A trial resulted in a verdict and judgment against the defendant for $10,200, and the Appellate Court for the First District affirmed the judgment.

A motion was made to strike from the record a part of the bill of exceptions, and the motion was reserved to the hearing.

At the June term, 1907, of the superior court the defendant entered its motion to dismiss the suit for want of jurisdiction of defendant and of the subject matter, and in support of the motion offered in evidence the articles of incorporation of the defendant, with evidence that it never

transacted any business in this State nor complied with the laws authorizing foreign corporations to do business in this State, and also the articles of incorporation of plaintiff as a corporation of this State, with evidence that it never complied with the statute of Minnesota authorizing foreign corporations to do business in that State. After hearing the evidence the court expressed some doubt upon the question, but said that his impression was against the motion. The attorney for defendant inquired whether the court held the judgment on the motion in reserve, whereupon the court said, "I will overrule it for the present," and the defendant noted an exception. No bill of exceptions was taken at that time and no extension of time was asked for or given for a bill of exceptions. After the trial, which took place at the July term, a bill of exceptions was asked for and time was given for filing the same. The bill of exceptions contains the proceedings at the June term. A bill of exceptions must be taken at the term when the rulings excepted to are made or within such time as the court may at that term grant for the purpose. (*Harris* v. *People*, 138 Ill. 63; *Wabash, St. Louis and Pacific Railway Co.* v. *People*, 106 id. 652; *Village of Franklin Park* v. *Franklin*, 228 id. 591; *City of Chicago* v. *Hulbert*, 235 id. 204.) When the bill of exceptions was being settled the plaintiff objected to having the matter in question included, but the court overruled the objection and refused to strike out such matter. A motion was made in the Appellate Court to expunge that part of the bill of exceptions, but the motion was denied, and it is now contended that the question cannot be raised by a motion here because no cross-errors were assigned in the Appellate Court. Cross-errors are not necessary to raise a question as to what is a proper part of the record in a cause, and it is proper to have that question determined on motion. The motion is sustained, and the proceedings at the June term recited in the bill of exceptions are expunged from the record.

Arguments are presented to this court that the defendant was excused from delivering the full amount of coal named in the contract by reason of a shortage of cars at the mine in Pennsylvania where it expected to procure the coal, and because the mine failed to produce as much coal as the defendant had contracted for, and the plaintiff did not prove damages to the amount assessed by the jury; but these are questions of fact finally disposed of by the judgment of the Appellate Court and are not proper subjects of controversy here.

It is assigned for error that the court sustained the demurrers to the third and fourth pleas. The defendant did not stand by the third plea but took leave to plead over and filed the fourth plea, which was a waiver of a right to question the ruling on the demurrer to the third plea. (*People v. Core,* 85 Ill. 248.) The fourth plea, which was filed under the leave, amounted to the general issue, and there was no error in sustaining the demurrer on that ground. *Mosher* v. *Rogers,* 117 Ill. 446.

It is argued that the judgment ought to be reversed because the court had no jurisdiction of the person of the defendant or of the subject matter and acquired no jurisdiction by service of the garnishee. The court had jurisdiction of the person of the defendant by its voluntary appearance and by filing the plea of the general issue and entering into the recognizance to pay any judgment that might be recovered. So far as the subject matter is concerned, the argument is that the court had no jurisdiction because the defendant had never complied with the foreign corporation laws of this State and could not have brought a suit here. That is an incorrect notion as to the rights of the defendant, since our foreign corporation laws have no reference to a resort to the courts of this State to recover a contract liability. (*Mandel* v. *Swan Land Co.* 154 Ill. 177.) The defendant could have sued its debtor, the garnishee, in the courts of this State without complying with

such foreign corporation laws or having an agent in this State. (*Spry Lumber Co.* v. *Chappell,* 184 Ill. 539; *Alpena Cement Co.* v. *Jenkins & Reynolds Co.* 244 id. 354.) The garnishee being liable to suit by the defendant for the collection of its debt and being subject to the process of the courts of this State, the debt could be reached under the Attachment act. *Lancashire Ins. Co.* v. *Corbetts,* 165 Ill. 592.

The defendant objected to the admission of the contract in evidence and the objection was overruled. It is contended that the ruling was wrong because there was no obligation to deliver any fixed quantity of coal at any fixed time or price and that the contract was wanting in mutuality. The defendant agreed to sell, and the plaintiff agreed to buy, estimated tonnage of 50,000 tons of Ella coal, which meant 50,000 tons by estimation, and might be more or less but would be approximately that amount. The contract was an agreement for practically a definite amount of coal to be delivered by the defendant to the plaintiff and which the plaintiff was bound to take. (*National Furnace Co.* v. *Keystone Manf. Co.* 110 Ill. 427; *Minnesota Lumber Co.* v. *Whitebreast Coal Co.* 160 id. 85; *McLean County Coal Co.* v. *City of Bloomington,* 234 id. 90.) The decisions of the Supreme Court of Minnesota relied upon construe contracts entirely different from this one. The prices were definitely fixed to be determined by the selling price of Youghiogheny lump coal, which was of the same grade and quality as Ella coal, and the place was defendant's docks.

Another reason for claiming the court erred in admitting the contract in evidence is, that it was void because it was entered into in the State of Minnesota and was to be performed there and the plaintiff had never complied with the statute of that State permitting foreign corporations to do business there. In the present state of the record the question arises only on the exclusion of evidence.

The defendant called the president of the plaintiff as a witness and attempted to make proof of the same facts

shown at the June term on the hearing of the motion, and the court sustained an objection to the offered evidence. It is contended that the offer was an entire one, which must either have been received or rejected in its entirety, and that the ruling was correct because some of the proof was not competent. We cannot adopt a view so narrow, but if the evidence was immaterial the ruling is not error. The Minnesota statute which the defendant offered to prove provides that every foreign corporation for pecuniary profit, before it shall be authorized or permitted to transact any business in that State or to continue business therein if already established, or to acquire, hold or dispose of property within that State, or to sue or maintain any action at law or otherwise in any of the courts of that State, must maintain a public office or place in that State for the transaction of its business and appoint an agent residing in the county where the office is located, duly authorized to accept service of process, and must file with the Secretary of State a copy of its charter and do other things specified in the statute. A contract made by a foreign corporation doing business in Minnesota is not declared to be void, but the corporation is subject to a fine and is not permitted to maintain any suit or action in any of the courts of the State. The rule in this State is, that if a contract is unlawful under the statute it is void, notwithstanding the statute imposes a penalty upon a foreign corporation doing business in violation of its provisions. (*Cincinnati Mutual Health Assurance Co.* v. *Rosenthal,* 55 Ill. 85.) The same principle seems to be maintained by the Supreme Court of Minnesota. (*Ingersol* v. *Randall,* 14 Minn. 304; *Heileman Brewing Co.* v. *Peimeisl,* 85 id. 121.) It was a part of the business of the plaintiff to purchase coal, but isolated transactions do not constitute carrying on business by a foreign corporation in the domestic State, numerous instances of which are given in 19 Cyc. 1268. The only transaction in Minnesota by the plaintiff was the making of the contract in

245—38

question and authorizing a delivery of the coal to a partnership located in Minneapolis, in that State, and we do not regard a single transaction of that kind as engaging in business in Minnesota. We do not think it could have been intended to prohibit a foreign corporation from making a single contract for a load of grain, stock or other personal property until it should open a public office, appoint an agent, file a copy of its charter and do the other things specified in the statute, or to make a contract of that kind utterly void, so that it would impose no liability on the foreign corporation or fix any standard of price or terms of payment. It is argued that the Minnesota statute goes further, and prohibits a foreign corporation from acquiring, holding or disposing of property within that State without complying with the statute. That certainly could not have been intended to prevent a purchase of movable personal property, such as grain, stock or coal, and we think it must relate to acquiring property having a fixed situs in that State. The evidence offered did not affect the validity of the contract and its exclusion was not error.

Counsel say that the superior court should have refused to assume jurisdiction of the case as a matter of comity toward the State of Minnesota, by which the courts of one State recognize the rights and privileges of citizens of another State acquired under their own laws, and the argument on that subject seems to be based on the motion, and evidence offered in its support, which have been stricken from the record. No other part of the record is pointed out where that question was presented to the trial court, but as we do not regard the laws of Minnesota as denying a right of action in that State we cannot agree with counsel that any question of comity is involved. However, we are referred to no case where it has been held that the courts of a State will turn a citizen away who has a good cause of action under its laws, because he could not maintain an action in another State.

Another assignment of error is, that the court erred in refusing to allow oral evidence concerning ambiguities in the contract.   There was no proper evidence offered in explanation of supposed ambiguous terms, but, regardless of proper methods of proof, a sufficient reason for sustaining the ruling is that there was no misunderstanding between the parties about the terms.   There was much correspondence between them and no dispute whatever as to what the contract meant.   They had the same understanding as to the amount of coal contracted for, the kind of coal, where it was to come from and the mine where it was mined, and all the other stipulations of the contract, and the only objection raised by the defendant to carrying it out was that there was a shortage of cars for the shipment of coal from the mine to Duluth.

The remaining question concerning the validity of the contract is raised by the claim that it was void because *ultra vires* the defendant corporation.   The defendant offered evidence, which was rejected, that it was organized for the general business of mining, smelting, reducing, refining and working mine ores and other minerals and manufacturing iron, steel and other metals.   The mining of coal was within the terms of the charter and the sale of coal was incidental to mining it, and therefore not beyond the corporate powers.   The evidence, if admitted, would not have shown that the contract was void.

What has been said disposes of the assignments of error that the court ought to have directed a verdict in favor of the defendant and that the court erred in ruling on instructions.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*