Elaine **STROMPOLOS**, on behalf of herself and all other customers similarly situated of Premium Readers Service, Plaintiffs,

v.

**PREMIUM READERS SERVICE**, and the Unknown Owner or Owners of Premium Readers Service, Defendant.

No. 70 C 3238.

United States District Court,
N. D. Illinois, E. D.
May 18, 1971.

Weinstein, Myer, New & Berlin, Chicago, Ill., for plaintiffs.

Ward, Lussier & Dee, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

The issue presented by defendant's motion for summary judgment is whether Section 226.1 et seq. of Volume 12 of the Code of Federal Regulations (otherwise known as and hereinafter referred to as Regulation Z) is a regulation constitutionally promulgated by the Federal Reserve Board within the scope of the authority granted to it by the Truth in Lending Act (hereinafter referred to as the Act), 15 U.S.C. § 1601 et seq. For the reasons stated below, we resolve this issue in the affirmative and therefore deny defendant's motion for summary judgment.

This suit is a class action brought under the Act and Regulation Z, alleging that the plaintiff Strompolos entered into a retail installment contract with the defendant Premium Readers Service for the purchase of a number of magazines to be delivered over a period of sixty months and to be paid for over a period of thirty months. The plaintiff alleges that the contract failed to disclose the total cash price and amount to be financed under the contract in violation of the Act and seeks to recover twice the amount of the finance charges imposed in connection with the transaction plus costs and reasonable attorney's fees pursuant to Section 130 of the Act, 15 U.S.C. § 1640. The defendant contends that it does not levy any finance

charge for the extension of credit but charges the same unitary price for its magazine subscriptions irrespective of whether the customer pays cash at the beginning of the contract term or over the thirty months installment period. The defendant claims, therefore, that it is not a creditor within the terms of the Act and that if Regulation Z brings the activities under the terms of the Act, the regulation is void as beyond the authority of the Federal Reserve Board.

The Truth in Lending Act was promulgated by Congress as an attempt "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit." 15 U.S.C. § 1601. Under the Act, the Federal Reserve Board is charged with the obligation of making regulations to effectuate the purposes of the Act. 15 U.S.C. § 1604. Pursuant to the above section, the Federal Reserve Board promulgated Regulation Z, which defines the coverage and liability of the Act to include persons who extend "consumer credit." 12 C.F.R. § 226.2(m). Consumer credit is defined in 12 C.F.R. § 226.2(k) to mean credit extended to a natural person and for which either a finance charge is or may be imposed, *or which, pursuant to an agreement, is or may be payable in more than four installments.* It is this so-called "four installment rule" which the defendant urges was beyond the statutory authority of the Board to promulgate because it renders any and all such four or more installment transactions subject to the disclosure requirements and liability provisions of the Act irrespective of whether the transaction involves the imposition of a finance charge. The defendant argues that this regulation ignores the language of the Act and the Act's legislative history, and is a lawless extension of the Act by the Board to cover persons and transactions such as those involved in this suit which Congress did not intend to reach.

Our starting point of inquiry as to the validity of this challenge to Regulation Z must, of course, be the statute itself. As stated above, the purpose of the Act is to foster the informed use of credit by making the consumer aware of the cost of credit. 15 U.S.C. § 1601. The duty to disclose certain information is imposed upon creditors by Sections 127–129 of the Act, 15 U.S.C. §§ 1637–1639, with the Act limited in its application to creditors who are defined as "creditors who regularly extend, or arrange for the extension of credit for which the payment of a finance charge is required." 15 U.S.C. § 1602(f). Criminal sanctions and potential civil liability are imposed upon those who fail to comply with the Act by Sections 112 and 130 of the Act, 15 U.S.C. §§ 1611 and 1640.

That portion of the Act which grants the Federal Reserve Board the power to issue regulations, Section 105, states:

"The Board shall prescribe regulations to carry out the purposes of this subchapter. These regulations may contain such classifications, differentiations, or other provisions * * * *as in the judgment of the Board* are necessary to effectuate the purposes of this subchapter, *to prevent circumvention or evasion thereof,* or to facilitate compliance therewith." (emphasis added) 15 U.S.C. § 1604

As the defendant's sale of magazines clearly comes within the four installment rule of Regulation Z and, if this regulation is valid, under the purview of the Act, our inquiry focuses upon Section 105 of the Act quoted above to determine if the Board has gone beyond its powers in promulgating this Regulation.

We recognize that the judiciary is not obliged simply to rubber stamp an administrative decision that is inconsistent with a statutory mandate or that frustrates a Congressional policy underlying a statute. N. L. R. B. v. Brown, 380 U.S. 278, 85 S.Ct. 980, 13 L.

Ed.2d 839 (1965); Dixon v. United States, 381 U.S. 68, 85 S.Ct. 1301, 14 L. Ed.2d 223 (1965). We further recognize that the Constitution requires the courts to inquire and determine if an administrative agency has exceeded its statutory power, Elgin, J. & E. Ry. Co. v. Benjamin Harris & Co., 245 F.Supp. 467 (N.D.Ill.1965), and that the efforts of an administrator or administrative agency to enlarge or restrict the application of a statute should be subjected to close scrutiny. Celebrezze v. Kilborn, 322 F.2d 166 (5 Cir. 1963). Nevertheless, accepting the above governing principles, we conclude that the Board's enactment of the four installment rule was a proper exercise of the power granted to it under Section 105 of the Act.

The Federal Reserve Board has concluded that its four installment rule is "a significant part of (Regulation Z), intended as a deterrent to those who might cease to charge a finance charge but, instead, inflate their so-called 'cash' price and thus avoid compliance." Federal Reserve Board letter, No. 86, August 26, 1969, from J. L. Robertson, Member, Board of Governors, Federal Reserve Board (in Court file), summarized 1 C. C. H. Consumer Credit Guide, ¶ 30,457. See, also, Federal Reserve Board letter, July 24, 1969, 1 C. C. H. Consumer Credit Guide, ¶¶ 30,113, 30,114. We agree with the Federal Reserve Board's evaluation of the necessity for this type of regulation.

 The facts of this particular case may very well demonstrate why the four installment rule is not only sensible but also necessary to prevent the Truth in Lending Act from being a hoax and delusion upon the American public. Although the defendant contends that it charges the same unitary price for both credit and cash sales, it is readily apparent that a seller in any industry which sells primarily or almost exclusively on a long term credit basis could easily set a theoretical unitary cash and credit price which he knows no one will pay in less than four installments and thus exempt himself and his industry from the coverage of the Act. Merely because a so-called "cash" price is the same as for a thirty installment repayment plan does not indicate that the "cash" price does not include substantial financing charges in a very real sense.

It is most logical that the Federal Reserve Board would, consistent with its power to prevent circumvention of the Act and consistent with the stated Congressional purposes of the Act, plug a loophole by which a substantial portion of long term credit dealers could escape from the Act's coverage. Neither the law, the Federal Reserve Board nor the courts are so simplistic as to believe that a person in the business of extending long term credit should be permitted in effect to abolish the Truth in Lending Act by merely charging a single "cash or credit" price knowing full well that the great bulk of its customers will never pay in less than, for example, thirty months. We conclude, therefore, that the four installment rule falls squarely within the scope of the Act's provision authorizing the Board to promulgate regulations that are proper or necessary to prevent circumvention or evasion of the Act.

The wording of Section 105 of the Act clearly indicates, not only that Congress delegated to the Board authority to issue regulations to effectuate the purposes of the Act, but that Congress also went further and granted the Board the power to promulgate, at its discretion, regulations necessary to prevent *circumvention* of the Act. The use of the word "circumvention" in the Act signifies that Congress was aware that some creditors who would otherwise fall within the purview of the Act might, after passage of the Act, attempt to restructure their consumer business relations in such a manner that they might technically avoid the wording of the Act.

 Along with the recognition of this potential for evasion, Congress also

**1104**

recognized the equally obvious fact that no legislative body could conceivably put into a workable piece of legislation regulations and restrictions covering every imaginable business transaction wherein credit may be involved. Consistent with other complex regulatory legislation, Congress granted an administrative agency the power to apply the basic purposes of the Act to the everyday world. Not only did Congress order the Federal Reserve Board to promulgate regulations to effectuate the purposes of the Act, it also took the further affirmative step of enabling the Board to reach creditors, who in the Board's judgment, were attempting to circumvent or evade the Act by structuring their credit activities to fall a fine line outside the Act ("* * * These regulations *may* contain such * * * provisions * · * * as in the judgment of the Board are necessary or proper * * * to prevent circumvention or evasion [of the Act]"). That the four installment rule may bring within the purview of the Act persons who otherwise would not have fallen under the Act's technical language but only near its penumbra is consistent with the authority given to the Board by Congress to prevent such circumvention. Were the Board not to have promulgated this rule nor the courts to sustain it, the Truth in Lending Act might never achieve its stated goals. We conclude that the four installment rule is a reasonable exercise of the authority granted to the Board.

■ It is clear that the defendant has extended to the plaintiff Strompolos consumer credit, as defined by Regulation Z, because the plaintiff received a present contract right—magazine subscriptions, in exchange for a promise to pay a certain sum in more than four installments. As we conclude that the four installment rule of Regulation Z, 12 C.F.R. § 226.2(k), is valid, defendant's motion for summary judgment must be denied.

An appropriate order will enter.