AMERICAN BUYERS CLUB OF MT. VERNON, ILLINOIS, INC., Plaintiff-Appellant, v. HAROLD Z. GRAYLING *et al.*, Defendants-Appellees.

Fifth District   No. 76-413

Opinion filed October 13, 1977.

William E. Aulgur, of Eldorado, for appellant.

No brief filed for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The American Buyers Club of Mt. Vernon, Illinois, Inc., brought suit against Harold and Rosie Grayling to recover $600.40 allegedly due on a promissory note, the largest portion of which, $437, represented the principal balance with the remainder being for late charges and attorney's

fees. The court, sitting without a jury, found for the defendants and the plaintiff appeals. The defendants were not represented by counsel at the trial and have not filed a brief in this court. Nevertheless, we have decided to consider the case on its merits. *Daley v. Jack's Tivoli Liquor Lounge, Inc.*, 118 Ill. App. 2d 264, 254 N.E.2d 814.

The plaintiff corporation operates a "buyers club" which they assert can save members substantial amounts over standard retail prices for many kinds of merchandise. These savings are to be achieved through bulk buying by the club. The total "membership fee" is $495.50. This fee is separated into an "initiation fee" of $39.50 and 24 monthly installments of $19. The "member benefit agreement" also recites that if any installment is 30 days past due the entire remaining balance may be accelerated and that the member agrees to pay attorney's fees and "legal expenses" of collection. The 24 monthly installments of $19 total $456. This amount is embodied in a promissory note which provides for acceleration of due date in the event of default and that costs of collection are to be paid by the makers of the note. The note must be signed at the same time as the "member benefit agreement." The agreement also includes the following provision:

> "MEMBER(S) authorize and direct the Club to sell or assign this agreement to any bank or finance company selected by the Club and agree to make all payments to assignee."

It is the practice of the Club, as testified to by its president, to assign the promissory note to various banks and finance companies. In this way the corporation receives an immediate cash payment rather than having to wait to receive the member's payments of $19 a month. The note in the instant case, which was admitted into evidence contains the following assignment on its reverse side:

> "Assignment with full recourse
> For value received the undersigned hereby sells, assigns and transfers this contract, note to _____ with full recourse.
> Seller American Buyers Club
> By Gene Watts
> Date 12-27-74"

Just below this language the First Illini Acceptance Corp. of Peoria, Illinois, accepted the assignment. There is a space for showing a "Finance Charge" and for the "Annual Percentage Rate" on both the agreement and the note. However, on both these instruments these spaces are filled in with the word "none." Mr. Grayling testified that he made two payments plus the initiation fee but then made no further payments. He testified that he investigated the prices for merchandise at the Club and found

that the savings he had been promised were not available. He also testified that he had been told that he could "drop out at any time." The trial court found the contracts, that is, the member benefit agreement and the promissory note were "unreasonable, unfair, * * * unjust, and * * * unconscionable" and entered judgment for the defendants.

■■ The law of Illinois provides a defense to the enforcement of a contract if that contract is illegal either as a matter of Illinois or of Federal law. (*First Trust & Savings Bank v. Powers*, 393 Ill. 97, 65 N.E.2d 377; *Zeigler v. Illinois Trust & Savings Bank*, 245 Ill. 180, 91 N.E. 1041.) The relevant Federal statute need not declare the contract void or unenforceable to render it available to the defendant as a ground for the defense of illegality. *Ideal Building Material Co. v. Benson Concrete Co.*, 273 Ill. App. 519; *Hunter W. Finch & Co. v. Zenith Furnace Co.*, 245 Ill. 586, 92 N.E. 521.

■■ Upon consideration of the contract and note in the instant case in the light of the foregoing standards we find them to be void since they are in violation of that portion of the Federal Consumer Credit Protection Act commonly known as the "Truth in Lending Act" (15 U.S.C. §1601 *et seq.*) and Regulation Z promulgated by the Federal Reserve Board ( 12 C.F.R. §226.1 *et seq*).

There have been a series of Federal cases dealing with factual situations nearly identical to that presented in the instant case in which contracts and promissory notes such as those we deal with here were found to be in violation of this Federal statute.

The Truth in Lending Act obliges merchants extending credit to disclose to consumers, among other information, the cash price, the total amount of deferred payments, the finance charge and the annual percentage rate of interest. (15 U.S.C. §1638.) Failure to disclose these items of information can result in the assessment of a penalty of twice the amount of the finance charge, though not less than $100 nor more than $1,000, and for the costs of the litigation including reasonable attorney's fees. 15 U.S.C. §1640.

In debating the coverage of the Act Congress was aware that "[w]hatever legislation was passed had to deal not only with the myriad forms in which credit transactions then occurred, but also with those which would be devised in the future." (*Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 365, 36 L. Ed. 2d 318, 327, 93 S. Ct. 1652, 1658.) Accordingly, broad authority was delegated to the Federal Reserve Board to interpret the Act and to promulgate such regulations as were deemed necessary to preserve the Act's effectiveness. 15 U.S.C. §1604.

By its terms, the Truth in Lending Act requires the disclosure of credit information only in those transactions "for which the payment of a finance charge is required." (15 U.S.C. §1602(f).) Soon after the passage

of the Act various financing techniques began to appear by which sellers attempted to evade the requirements of the Truth in Lending Act by claiming that no finance charge was being imposed for a particular sales transaction. See Warren & Larmore, *Truth in Lending: Problems of Coverage*, 24 Stan. L. Rev. 793 (1972).

■■ To give verity to the purpose of the Act the Federal Reserve Board adopted the "Four Installment Rule" as part of a series of Truth in Lending regulations collected under the title "Regulation Z." (12 C.F.R. §226.) By that rule, Truth in Lending is extended to all credit transactions "for which either a finance charge is or may be imposed or which pursuant to an agreement is or may be payable in more than four installments." 12 C.F.R. §226.2(k).

It is Regulation Z, then, which brings the instant contract within the coverage of the Truth in Lending Act. (*Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 36 L. Ed. 2d 318, 93 S. Ct. 1652.) The term, "Finance Charge," which the Act requires to be disclosed, is defined as "the sum of all charges, payable directly or indirectly by the person by whom the credit is extended and imposed directly or indirectly by the creditor as an incident to the extension of credit, * * *." (15 U.S.C. §1605(a).) Regulation Z repeats the statutory definition and adds that a finance charge is to be considered such "whether paid or payable by the customer, the seller or any other person on behalf of the customer to the creditor or to a third party * * *." 12 C.F.R. §226.4(a).

Several Federal cases have found that contracts nearly identical with those in the instant case not only came within the purview of the Truth in Lending Act through Regulation Z but also involved the imposition of finance charges which are required to be disclosed by the terms of the Act itself. *Strompolos v. Premium Readers Service*, 326 F. Supp. 1100 (N.D. Ill. 1971); *Joseph v. Norman's Health Club, Inc.*, 386 F. Supp. 780 (E.D. Mo. 1974); *Kriger v. European Health Spa, Inc.*, 363 F. Supp. 334 (E.D. Wis. 1973).

The trend for this interpretation began with *Strompolos v. Premium Readers Service* which was a class action for the statutory damages provided for failure to disclose the amount financed, the annual percentage rate and the cash price. The defendants argued that since they charged only one price whether paid in full in cash or paid in installments over a period of time there was therefore no "cash price" as such so no finance charge or annual percentage rate. The court disagreed saying "[n]either the law, the Federal Reserve Board nor the courts are so simplistic as to believe that persons in the business of extending long term credit (the applicable payment period was thirty months) should be permitted in effect to abolish the Truth in Lending Act by merely charging a single 'cash or credit' price knowing full well that the great

bulk of customers will never pay in less than [several] months." (326 F. Supp. 1100, 1103.) "Merely because a so-called 'cash' price is the same as for a thirty installment repayment plan does not indicate that the 'cash' price does not include substantial financing charges in a very real sense." 326 F. Supp. 1100, 1103.

*Joseph v. Norman's Health Club, Inc.*, was also a class action to recover the statutory penalty for violation of Truth in Lending and Regulation Z. There memberships were sold in a health club for varying lengths of time. Most were "lifetime" memberships and involved a promissory note such as that under consideration here. However the club also offered a "cash price" reduction of 10% to those who were interested although only some 2% of their buyers accepted it. The promissory notes were discounted at financial institutions for amounts varying from 70% to 85% of their face value. On the contracts the "finance charge" was given as zero and the "annual percentage rate" was given as zero. The court found that the "finance charge" which the Truth in Lending Act required to be disclosed was the different between the "cash price" offered, even though very seldom accepted, and the credit price accepted by the great majority of the customers.

The court in *Kriger v. European Health Spa* went even further. That case was also an action for statutory damages, this time however, against the finance companies which discounted the promissory notes as well as the health club selling the memberships. Only one price was charged for the memberships whether paid in full or paid over time. Finance charge and annual percentage rate was given as "none." The court held that the figure which should have been disclosed as the "cash price" was the amount which the club received from the finance companies when they sold the promissory notes. The amount of the discount, the difference between the price paid to the club for the note and the face amount, was the "finance charge" as this amount represented the actual cost to the consumer of paying the price of membership over time.

This same reasoning was followed by the California Supreme Court in *Glaire v. La Lanne-Paris Health Spa, Inc.* (1974), 12 Cal. 3d 915, 117 Cal. Reptr. 541, 528 P.2d 357. The case involved memberships in a health club sold at a single price whether prepaid or paid in installments. The contract, which declared that there was no "service charge" for the extension of credit, was sold to a finance company for an amount less than the face value of the note. The court ruled that the difference between what the Spa received for the note and the face amount which the customer was then obligated to pay the finance company was the price charged to cover the cost and risk of extending credit and therefore should have been disclosed as a "finance charge."

■■ We find the reasoning and analysis of these decisions persuasive.

The instant case concerns the same arrangements and practices found to be violative of the Federal Truth in Lending Act. The contracts, by explicit language on their face, are designed specifically to be sold or assigned to banks and finance companies. The contract in the instant case was in fact so assigned. The club receives a net cash amount while the assignee of the note has the right to receive from the buyer-member a sum greater than this amount which represents a compensation to the assignee to cover the cost and risk of extending credit. This arrangement certainly represents a charge "payable * * * indirectly by the person to whom the credit is extended, and imposed * * * indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. §1604(a).

We recognize that the cases cited also involved elements which are not present in the instant case. Such as, in *Glaire*, an interlocking directorate and common control over the Spa and the finance company. However, this matter goes only to the question of the liability of the finance company to a consumer, an issue which is not now before us. The factors that controlled the cited cases are present here and we perceive nothing in the factual settings of any of the cases to remove them from consideration as precedents in this case.

Although unnecessary to the decision we reach we note that the trial court's finding that the contract was unconscionable was not against the manifest weight of the evidence. It is obviously written in a manner to evade Federal law as the foregoing discussion indicates. It is also designed to lead the purchaser to believe that he is actually becoming a member of a club rather than arranging for the purchase of goods or services. The first payment is called an "initiation fee" and the remaining payments are denominated "dues." The contract is termed a "member benefit agreement" and speaks of a waiting period required before an "application" can be "processed" and "accepted."

However, it is apparent that there are no club benefits involved and that the purchasers are members of a club in name only. The contract does not provide for membership participation in the election of officers or directors, nor in respect to the exercise of club powers or the cost of club services. The member, as he is called, may not resign if he is displeased with the operation of the club. There are no club activities described other than the right to buy something from the club.

Further, the wording of the contract is obviously intended to conceal from the ordinary consumer that once he has signed the contract and promissory note he is obligated to continue to make payments without regard to whether he is fact makes use of the club facilities.

The situation described in the instant case comes within the ambit of the developing doctrine of unconscionability as discussed in the cases collected at Annot., 18 A.L.R. 3d 1305 (1968). The person signing the

contract presented here receives a great many words and vague promises but little else for his $495.50. See the concurring opinion of Mr. Justice Moran in *American Buyers Club v. Honecker,* 46 Ill. App. 3d 252, 361 N.E.2d 1370.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

CARTER, P. J., and G. J. MORAN, J., concur.