AMERICAN BUYERS CLUB OF MT. VERNON, ILLINOIS, INC., Plaintiff-Appellant, v. EUGENE J. ZUBER, et al., Defendants-Appellees.

Fifth District No. 77-342

Opinion filed March 1, 1978.

G. MORAN, J., dissenting.

William E. Aulgur, of Eldorado, for appellant.

No brief filed for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

The American Buyers Club of Mt. Vernon, Illinois, Inc., brought suit against Eugene and Catherine Zuber to recover $619.40, the largest portion of which, $456, represented the principal balance allegedly due on a promissory note executed for the purpose of securing payment under a "member benefit agreement" with the plaintiff, the remainder being late charges and attorney's fees. The defendants filed a motion for summary judgment in which they alleged that the member benefit agreement was unenforceable in that it failed to comply with certain provisions of the Illinois Retail Installment Sales Act (Ill. Rev. Stat. 1973, ch. 121½, par. 501 et seq.). The lower court granted the defendant's motion for summary judgment and the plaintiff appeals. Although the defendants have not filed a brief in this case, we have, nevertheless, decided to consider this

case on its merits. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976).

The plaintiff corporation operates a buying service which allegedly gives its "members" the right to purchase various kinds of merchandise at prices substantially below those available at the retail level. The member benefit agreement provides that the "membership fee" is $495.50 whether it be paid in cash or by monthly installments. In the instant cause, the defendants paid the plaintiff an initiation fee of $39.50 and, by the terms of the agreement and the note, agreed to pay the remaining $456 by 24 monthly payments of $19 each. Both the agreement and the note specifically recite that there is no finance charge and that the annual percentage rate of interest is zero. The membership agreement also includes the following provision:

> "MEMBER(S) authorize and direct the Club to sell or assign this agreement to any bank or finance company selected by the Club and agree to make all payments to assignee."

Thus, the agreement is assignable by its terms and the note upon which this action is based is also in negotiable form. Although there is no indication in the case at bar that the note and agreement have been assigned, it may be presumed that an assignment of the defendant's obligation to a finance company or a bank at a discount was foreseeable.

In their motion for summary judgment the defendants alleged that the entire transaction with the plaintiff constituted a "retail installment transaction" as defined by section 2.5 of the Illinois Retail Installment Sales Act (Ill. Rev. Stat. 1973, ch. 121½, par. 502.5) and that the member benefit agreement violated two provisions of the Act: (1) that it failed to comply with section 3 (Ill. Rev. Stat. 1973, ch. 121½, par. 503) because it did not recite the words "RETAIL INSTALLMENT CONTRACT" at the top of the instrument nor directly above the space reserved for the buyers' signature; and (2) that it failed to comply with section 4 (Ill. Rev. Stat. 1973, ch. 121½, par. 504) because the buyers names were not incorporated into the body of the instrument. By its allowance of the motion for summary judgment, the lower court found the defendants' allegations to be correct and concluded that the instrument's noncompliance with the Act rendered the agreement unenforceable.

■■ The plaintiff initially challenges the propriety of the lower court's allowance of the defendants' motion for summary judgment because of the defendants' failure to submit affidavits or to give testimony in support of their motion. Section 57 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 57) provides that either a plaintiff or a defendant may move for summary judgment in his favor with or without supporting affidavits. The motion should be granted where there is no genuine issue as to any material fact and the movant is entitled to relief as a matter of law.

(*Carruthers v. B. C. Christopher & Co.*, 57 Ill. 2d 376, 380, 313 N.E.2d 457, 459 (1974).) In the instant cause there were no disputed issues of fact, but rather, the lower court was presented with a question of law which may be properly decided on a motion for summary judgment (*Sidwell v. Sidwell*, 28 Ill. App. 3d 580, 583, 328 N.E.2d 595, 598 (4th Dist. 1975)). Thus, our inquiry on this appeal from the grant of summary judgment is whether the defendants were entitled to judgment as a matter of law. In this regard, the controlling considerations are whether the instant transaction falls within the purview of the Illinois Retail Installment Sales Act, and if it does, whether the failure to comply with certain provisions of the Act renders the agreement unenforceable.

We initially note that it is probably erroneous to consider the defendants "members" or their payments under the member benefit agreement "dues." As we commented on this arrangement in our recent decision in *American Buyers Club v. Grayling*, 53 Ill. App. 3d 611, 616, 368 N.E.2d 1057, 1061 (1977), the purchasers are members of a club in name only; rather it is a buying service that, for a fee, arranges for the purchase of goods or services. It is obvious that this arrangement constitutes the "furnishing or rendering of services" within the meaning of section 2.5 of the Act (Ill. Rev. Stat. 1973, ch. 121½, par. 502.5) which provides:

" 'Retail installment transaction' means a credit sale of goods or a furnishing or rendering of services by a retail seller to a retail buyer for a deferred payment price payable in one or more installments pursuant to a retail installment contract or a retail charge agreement."

■■ However, the plaintiff urges, correctly we think, that the absence of a charge for the extension of credit in the defendants' promissory note removes the transaction from the purview of the Act because a finance charge is listed as one of the elements of a "deferred payment price" as that term is defined in section 2.12 of the Act (Ill. Rev. Stat. 1973, ch. 121½, par. 502.12) which provides:

" 'Deferred payment price' means the total of (1) the cash sale price of the goods or services purchased, (2) all other charges individually itemized which are included in the amount financed but which are not a part of the finance charge, and (3) the finance charge."

In interpreting the Illinois Retail Installment Sales Act, a court has no option but to follow the plain language and direction of the statute (*R. S. Boston Co. v. Chapman*, 131 Ill. App. 2d 385, 266 N.E.2d 767 (1st Dist. 1970)). In this regard, we believe that the above definition indicates a legislative recognition that a retail seller may sell goods or render services for the immediate payment of a certain amount ("cash price") or permit

payment over a period of time for a greater total price ("deferred payment price"). In our opinion, the transactions that are contemplated to fall within the scope of the Act are those transactions where a charge is made for the extension of credit to a customer of a retailer in addition to what the cost would be if payment was made in cash and not by installments. To rule otherwise would render the inclusion of the term "finance charge" in section 2.12 unessential, and it is a general rule of statutory construction that statutes should be construed so that no sentence, clause or word is superfluous (*In re Estate of Cregar*, 30 Ill. App. 3d 798, 801, 333 N.E.2d 540, 543 (1st Dist. 1975)). Moreover, there is no rule of construction which empowers a court to declare that the legislature did not mean what the plain language of the statute imports. (*Western National Bank of Cicero v. Village of Kildeer*, 19 Ill. 2d 342, 350, 167 N.E.2d 169, 178-74 (1960).) Hence, a finding that a finance charge is present in the instant transaction is necessary in order to determine that the transaction is governed by the Illinois Retail Installment Sales Act.

Section 2.11 of the Act defines a finance charge as "the sum of all charges payable, directly or indirectly by the buyer * * * whether payable by the buyer, the seller, or any other person on behalf of the buyer to the seller or a third party * * *." (Ill. Rev. Stat. 1973, ch. 121½, par. 502.11.) This definition of a finance charge is almost identical to that found in Regulation Z (12 CFR §226.4(a) (1977)) as promulgated by the Federal Reserve Board under that portion of the Federal Consumer Credit Protection Act known as the "Truth in Lending Act" (15 U.S.C. §1601 *et seq.* (1976)) and was the subject of our examination in *American Buyers Club v. Grayling*, where a similar 24-month installment contract providing for a single "cash or credit" price was involved. We found the contract in *Grayling* to be within the coverage of the Truth in Lending Act through the "four Installment Rule" of Regulation Z which extends the truth in lending disclosure requirements to all credit transactions "for which either a finance charge is or may be imposed or which pursuant to an agreement is or may be payable in more than four installments." (12 C.F.R. §226.2(k) (1977).) That rule has been said to have been intended to be a prophylactic measure; not presuming that all creditors within its ambit assess finance charges, but, rather, imposing a disclosure requirement on all members of a defined class so as to discourage evasion by a substantial portion of that class. (*Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 377, 36 L. Ed. 2d 318, 334, 93 S. Ct. 1652, 1664 (1973).) We held in *Grayling* that the club's failure to disclose in its membership agreement form, among other items of information, the cash price, the finance charge, the total amount of deferred payments and the annual percentage rate of interest as required by section 128 of the Truth in Lending Act (15 U.S.C. §1638 (1976)) rendered the contract illegal

under Federal law and void. 53 Ill. App. 3d 611, 613, 368 N.E.2d 1057, 1059.

In addition, there was evidence in *Grayling* that it was the club's practice to assign its promissory notes to various banks at a discount and the note in that case had, in fact, been so assigned. After examining several Federal cases in which similar unitary price contracts were found to have involved the imposition of finance charges which are required to be disclosed by the terms of the Act itself (see *Joseph v. Norman's Health Club, Inc.*, 386 F. Supp. 780 (E.D. Mo. 1974); *Kriger v. European Health Spa, Inc.*, 363 F. Supp. 334 (E.D. Wis. 1973); *Strompolos v. Premium Readers Service*, 326 F. Supp. 1100 (N.D. Ill. 1971)), we reasoned that through its sale or assignment of the membership agreements at a discount the club rendered a compensation to the assignee to cover the cost and use of extending credit. This arrangement, we concluded, represented "a charge 'payable * * * indirectly by the person to whom the credit is extended, and imposed * * * indirectly by the creditor as an incident to the extension of credit.' 15 U.S.C. §1604(a)." 53 Ill. App. 3d 611, 616, 368 N.E.2d 1057, 1061.

In the instant cause, the membership agreement signed by the defendants contains the items of information required to be disclosed by section 128 of the Truth in Lending Act (15 U.S.C. §1638 (1976)) and absent in the agreement involved in *Grayling*. Also, as there is no indication in the record that the defendants' note has been assigned or that it is the regular practice of the plaintiff to assign its member's notes at a discount, we cannot say that there is a hidden cost of credit buried within the total membership fee that would belie the recitals in the membership agreement that the finance charge and annual percentage rate of interest is zero. Therefore, we must conclude that the instruments before us comply with the credit disclosure requirements of the Federal Truth in Lending Act.

Unlike the Federal Truth in Lending Act and Regulation Z, the Illinois Retail Installment Sales Act has no provision with broad sweep of a four installment rule that would mandate its coverage to all agreements payable in more than four installments or to contracts where a finance charge may be imposed. Turning again to the question of whether there is a finance charge present in the transaction which is the subject of this case, we note that included within the definition of a finance charge under section 2.11 of the Act is any charge that a creditor imposes upon another creditor for the purchase or acceptance of a customer's obligation "if the customer is required to pay any part of that charge in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation." (Ill. Rev. Stat. 1973, ch. 121½, par. 502.11(8).) We interpret this provision to evince a recognition by the legislature that a creditor's cost of

discounting an installment sales contract is ultimately born by the makers and, therefore, a cost of credit. However, this provision is inapplicable in the instant cause for, as we have already noted, there is no evidence that the defendants' note has been assigned. We conclude, therefore, that since there is no evidence of an imposition of a finance charge in the transaction between the plaintiff and defendants, the transaction is not within the purview of the Illinois Retail Installment Sales Act. This conclusion renders it unnecessary for us to consider whether violations of the Act preclude enforcement of a contract although we can find no authority that would support such a claim or that would alter the contrary conclusion reached in *Anco Investment Corp. v. Spencer*, 53 Ill. 2d 396, 292 N.E.2d 726 (1973). We finally note that should there be evidence presented that the "unitary price" contract involved in this cause contains a hidden finance charge in the manner discussed in this opinion, the nondisclosure of the amount of the finance charge will constitute violations of both the Illinois Retail Installment Sales Act and the Federal Truth in Lending Act.

For the foregoing reasons, the judgment of the Circuit Court of Jefferson County is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.

EBERSPACHER, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

There are no real distinctions between the contract involved in this case and the contract in *American Buyers Club v. Grayling*, 53 Ill. App. 3d 611, 368 N.E.2d 1057. In my opinion, the holding in this case is in direct conflict with our holding in *Grayling* wherein another panel of this court held that same contract to be void because it was in violation of the Federal Consumer Credit Protection Act, commonly known as the "Truth in Lending Act" (15 U.S.C. §1601 *et seq.* (1976)) and Regulation Z promulgated by the Federal Reserve Board (12 C.F.R. §226.1 *et seq.* (1977)).

In *Grayling* it was also held that this contract was subject to the defense of unconscionability because it was written in a manner to evade the State and Federal laws and to deceive the buyer. We said in *Grayling*:

"Although unnecessary to the decision we reach we note that the trial court's finding that the contract was unconscionable was not against the manifest weight of the evidence. It is obviously written in a manner to evade Federal law as the foregoing discussion indicates. It is also designed to lead the purchaser to believe that he

is actually becoming a member of a club rather than arranging for the purchase of goods or services. The first payment is called an 'initiation fee' and the remaining payments are denominated 'dues.' The contract is termed a 'member benefit agreement' and speaks of a waiting period required before an 'application' can be 'processed' and 'accepted.'

However, it is apparent that there are no club benefits involved and that the purchasers are members of a club in name only. The contract does not provide for membership participation in the election of officers or directors, nor in respect to the exercise of club powers or the cost of club services. The member, as he is called, may not resign if he is displeased with the operation of the club. There are no club activities described other than the right to buy something from the club.

Further, the wording of the contract is obviously intended to conceal from the ordinary consumer that once he has signed the contract and promissory note he is obligated to continue to make payments without regard to whether he in fact makes use of the club facilities.

The situation described in the instant case comes within the ambit of the developing doctrine of unconscionability as discussed in the cases collected at Annot., 18 A.L.R.3d 1305 (1968). The person signing the contract presented here receives a great many words and vague promises but little else for his $495.50. See the concurring opinion of Mr. Justice Moran in *American Buyers Club v. Honecker*, 46 Ill. App. 3d 252, 361 N.E.2d 1370." 53 Ill. App. 3d 611, 616-17, 368 N.E.2d 1057, 1061.

Our holding in *Grayling* and other cases involving this identical contract became the law of the case so far as this contract is concerned. The holdings should be followed, even though the majority in this case might disagree with them.