Angela **MANZINA** and Luis Cruz, for themselves and all other persons similarly situated, Plaintiffs,

v.

The **PUBLISHERS GUILD, INC.,** et al., Defendants.

No. 73 Civ. 2945.

United States District Court, S. D. New York.

Dec. 11, 1974.

Brooklyn Legal Services Corp. B, Brooklyn, N. Y., for plaintiffs; John C. Gray, Jr., Douglas V. Ackerman, Susan S. Seel, Brooklyn, N. Y., of counsel.

Whitman & Ransom, New York City, for defendants, Magazine Publishers Association, Inc. and Central Registry of Magazine Subscription Solicitors; Paul M. O'Connor, Jr., New York City, of counsel.

Belson, Connolly & Belson, New York City, William B. Sullivan, Earl W. Kintner, Sidney Harris, Washington, D. C., for defendant, The Publishers Guild, Inc.; John J. Connolly, New York City,

Arent, Fox, Kintner, Plotkin, & Kahn, Washington, D. C., of counsel.

## OPINION

WERKER, District Judge.

The defendant, The Publishers Guild, Inc. (Guild), has moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure on the ground that the material facts in this case do not present a genuine, triable issue of fact.

This action was commenced in July 1973 by the plaintiffs on behalf of themselves individually and on behalf of an alleged class of "all other persons similarly situated." The complaint alleges violations of the Federal Truth in Lending Act (Title I of the Consumer Credit Protection Act) 15 U.S.C. §§ 1601–1665, Regulation "Z" thereto, 12 C.F.R. § 226, and the New York Retail Installment Sales Act, New York Personal Property Law, McKinney's Consol.Laws, c. 41, §§ 401–419.

The violations claimed by plaintiffs allegedly arose from the Guild's "falsely represent[ing] that no finance charge or credit service charge is included in the cash price" of its installment sales contracts with plaintiffs and other members of their class, and from the Guild's failure to make those disclosures which are required by both the federal and state acts when a finance charge or credit service charge is imposed. By stipulation, the class action determination has been postponed pending decision on this motion.

Plaintiffs seek relief by way of an accounting, declaratory judgment, cancellation, refund, damages, restitution, recission, costs and attorneys' fees.

The following facts are undisputed:

In December 1972 Angela Manzina entered into an installment sales contract with the Guild for the purchase of eight periodicals and a dictionary. The contract used provides that the Guild deliver these to Manzina for a term of sixty months or five years. The cash price stated in the contract is $180. The total cash down payment is $9. The "deferred payment price" stated in the contract is the sum of the nine dollar cash downpayment and the total installment payments, $9 per month for 19 months or $180; "nothing the remaining months." A separate handling charge is specified for the dictionary, as is a late charge of $.25. The contract also contains this proviso:

> It is understood and agreed that if payment on this contract should become more than 90 days past due, the full remaining balance may immediately become due and payable in full, to the holder.

Lastly, the contract states that there is "no finance charge and no credit service." [1]

The Luis Cruz contract was entered into in October 1970. It provided for the delivery of three magazines over differing periods (one and one-half years of Cue, two years of Children's Digest, three years of Sport), and a dictionary for a cash price of $83.95 plus sales tax and a delivery charge of $2.30. The downpayment was $4.95 and the unpaid balance of $79.00 was to be paid at the approximate rate of $1.25 per week payable at the rate of $5 per month. There was to be "no finance charge." Like the Manzina contract, the Cruz contract also specified a late charge of $.25, and the immediate accrual of the balance due

---

1. Guild also has a form of installment contract for the same magazine—dictionary package which does include a finance charge, as follows:

| | | |
|---|---|---|
| 1. cash price | $180. |
| 2. cash downpayment | $ 9. |
| 3. unpaid balance cash price | $171. |
| 4. amount financed | $171. |
| 5. finance charge | $ 50. |
| 6. total of payments 4 and 5 | $221. |
| 7. deferred payment price 1 & 5 | $230. |
| 8. annual percentage rate | 11.15% |

It provides for payment of "$3 per month for next 57 months," thus more than doubling the Manzina time period for payment in exchange for the $50 finance charge.

upon thirty days delinquency. Mr. Cruz defaulted on February 28, 1971. Defendant sued him in the Civil Court of the City of New York seeking $64 plus interest for "goods sold and delivered."

The form of contract used in Mr. Cruz's case was approved by Sheldon Feldman, Assistant Director for Special Statutes, Bureau of Consumer Protection of the Federal Trade Commission, by letter dated October 12, 1973. The letter stated in pertinent part:

I have reviewed the files thoroughly and it appears that the contracts submitted with your letter of February 9, 1971 comply with the provisions of the Truth In Lending Act. At that time the inquiry was considered closed . . . .

The Guild has been engaged in the business of selling publications for more than forty years. It does business in New York and several other states, selling different combinations of magazines and dictionaries which it denominates "publication packages." These differ in the number and types of periodicals offered, the length of subscription, and the type of dictionary. The publication packages are sold either for (1) cash, (2) short term installment contracts (at the same price as cash contracts) which state "no finance charge" and/or "no credit service charge," and/or "nothing in this office is free," or (3) long term installment sales contracts where the finance charges or credit service charges are specifically set forth as in note 1, *supra.*

The installment sales contract without finance or credit service charge has a lower deferred payment, a shorter time span, and fewer installments than the installment sales contract with such charge, the price difference being exactly equal to the stated finance charge. It is not assigned, endorsed or discounted by the Guild to third parties in any way.

In 1972 2100 cash sales were made by Guild, amounting to approximately $178,000, and in 1973 1300 such sales were made, totalling approximately $120,000. These figures represented 9.5% and 5.6% respectively of the defendant's total sales revenue in each year, $1,695,684 in 1972 and $2,022,850 in 1973.

Plaintiff's first cause of action charges defendant with falsely representing lack of finance charges and failing to make disclosures pertinent thereto in violation of the Federal Truth In Lending Act (TILA). The second cause of action alleges false representation of lack of credit service charges in violation of the New York Retail Installment Sales Act (RISA). The third cause of action repeats the allegations set forth in the first and second ones, and simply requests additional relief. At the heart of each of plaintiffs' charges is the contention that a percentage of the deferred payment price in those installment sales made without stated finance charges represents a hidden finance charge ostensibly equal to or greater than the defendant's cost of extending credit. They urge that defendant Guild be required to state that percentage specifically in the installment contract as a finance charge, and in order to determine what that percentage is, plaintiffs have sought to learn, through requests to admit and interrogatories, the defendant's exact costs of doing business.

The cost of extending credit, however, is but one of the Guild's costs of doing business, and is not reasonably ascertainable since defendant does not discount or assign its credit transactions to third parties. Plaintiffs claim, in essence, that all of the Guild's costs of doing business are converted into a finance charge which is included in "cash price"; "costs incurred" and "charges imposed," however, simply cannot reasonably be presumed synonymous as plaintiffs would have it. Plaintiffs have not demonstrated, and indeed this court is persuaded that they cannot demonstrate, that the price is fictitious, or that there is a difference between the cash price charged when payment is made in full at the time of subscription, and the deferred payment price under the "no finance charge"/"no credit

service charge" contract. *See* Kriger v. European Health Spa, Inc., 363 F.Supp. 334 (E.D.Wis.1973).

■ Such a demonstration is essential to their cause of action, under both the federal statute and the New York statute. If there is no differential, the cost to the consumer is the same whether he or she pays in cash all at once, or by installments over time, and *ipso facto,* the choice of the installment method does not carry with it the imposition of a hidden finance charge. This case is clearly distinguishable from cases such as Kriger v. European Health Spa, Inc., *supra,* where the court found that "since virtually no cash customers were in existence who could 'absorb' the credit cost charged to plaintiffs and other installment customers," a finance charge was covertly passed on to installment purchasers. *Id.,* at 338. *See also* Strompolos v. Premium Readers Service, 326 F. Supp. 1100 (N.D.Ill.1971); Joseph v. Norman's Health Club, Inc., 336 F.Supp. 307 (E.D.Mo.1971). Here, between two and three thousand cash sales a year were effected, totalling well over $100,000.

A "finance charge" is defined in TILA as the sum of all charges "imposed" by the creditor as an incident to the extension of credit. Items specifically identified as such charges are interest, time-price differential, any amount payable under a discount system, etc. 15 U.S.C. § 1605(a), (b), (c).[2] TILA and its implementing regulation, "Z," were written to ensure "that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. *See* Ratner v. Chemical Bank New York Trust Co., 329 F.Supp. 270 at 276 (S.D.N.Y. 1971). This purpose is served in "close end" credit[3] transactions like those involved in this case by requiring creditors to disclose certain information, such

as a finance charge imposed, to prospective debtors.

■ The mere fact that a transaction falls within the TILA rules relating to consumer credit transactions, however, does not mean that it necessarily involves a finance charge. Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), rev'g, 449 F.2d 235 (5th Cir. 1971). In *Mourning* the Supreme Court dealt with a section of Regulation "Z" commonly known as the "Four Installment Rule," which provides that disclosures must be made in consumer credit transactions when *either* there is a finance charge *or* payments are to be made in more than four installments. 12 C.F.R. § 226.2(k). The Court there noted that in cases where no finance charge exists, creditors must nonetheless make disclosures about cash price, deferred payment price, and number, amount and due dates of payments. As Chief Justice Burger stated at 411 U.S. page 369, 93 S.Ct. at page 1660:

> Even as to sales in which it was impossible to determine what, if any portion of the price recompensed the creditor for deferring payment, the regulation at least required that the consumer be provided with some information which would enable him to make an informed economic choice.

■■ There is no question in this court's mind that the *Mourning* decision brings the Guild within TILA, and that by its regulation of consumer credit TILA includes the agreements entered into between plaintiffs and defendant here. There is likewise no question, however, that defendant falls within TILA only by virtue of the "more than four installments" part of Regulation "Z," not by virtue of the finance charge part. As the Guild has made all of the disclosures required of it in its contract forms, it has fully complied

---

2. Sales tax and the delinquency charges are specifically excluded. 12 C.F.R. § 226.-4(b)(3) and § 226.4(c).

3. "The term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e).

with the Act. *See* Consumer Credit Guide [1969–1974 Transfer Binder] ¶ 30,086 (Advisory Opinion of the Federal Reserve Board, Letter No. 30, July 8, 1969, by Frederick Solomon, Director, cited in *Mourning, supra* at 377, n. 42, 93 S.Ct. 1652). Plaintiffs' first cause of action, alleging violations of the federal Act, must therefore be dismissed.

 Likewise, plaintiffs' second cause of action, alleging violation of state law, must also be dismissed, for as plaintiffs themselves admit, it is premised on the same slippery presumption as the first.[4] The third cause of action fails to state a claim at all besides those already alleged in the other causes of action. Finally, plaintiff Cruz is barred from participating in an action under either statute by virtue of the applicable statute of limitations. Claims under TILA must be brought within one year of the alleged violation. 15 U.S.C. § 1640(a). *See* Wachtel v. West, 344 F. Supp. 680 (E.D.Tenn.), aff'd, 476 F.2d 1062 (6th Cir.), cert. denied, 414 U.S. 874 (1973); Kristiansen v. John Mullins & Sons, Inc., 59 F.R.D. 99 (E.D.N.Y. 1973). The New York legislature likewise intended that claims under RISA be brought within one year. In 1969, in deferrence to TILA, it repealed the New York State Truth In Lending Act. A note appended to the repealing statute, L.1969 c. 1141, indicates that the applicable statute of limitations in the New York Civil Practice Law and Rules, which had been one year, was being eliminated solely because federal law was deemed to supercede the New York provision. The note goes on to state:

. . . Since the Federal law creates a penalty for the failure to disclose credit information pursuant thereto and a right to enforce the penalty in any court of competent jurisdiction, with a one-year limitation, . . . a one-year limitation on ac-

tions to recover a penalty under the State Truth-In-Lending Act, is no longer necessary. Accordingly, the bill also repeals . . . [that state statute of limitations] . . . .

Cited in General Obligations Law, 1974–75 Supp. (McKinney) at 98–99.

As plaintiff Cruz's complaint is barred by the statute of limitations, and plaintiff Manzina's by the failure to state a genuine, triable issue, this court must grant summary judgment in defendant Guild's favor. As liability of the other defendants is predicated on the alleged primary liability of the Guild, the court's decision on this motion mandates dismissal as to them as well.

So ordered.

---

4. Credit service charge is defined in RISA as "that part of the entire amount agreed to be paid for the goods or services which exceeds the aggregate of the cash sale price thereof and the amounts, if any, included in a retail installment sale for insurance and official fees." § 401(11) Personal Property Law. Here there were no charges for insurance or official fees.