**Surlarnce C. CARNEY, Appellee,**

v.

**WORTHMORE FURNITURE, INC., Appellant.**

No. 76–2307.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1977.
Decided July 22, 1977.

Sterling H. Moore, Richmond, Va., for appellant.

James R. Jackson, Jr., Richmond, Va., J. Barrett Jones, Richmond, Va., on brief, for appellee.

Before BRYAN, Senior Circuit Judge, and WIDENER, Circuit Judge.*

PER CURIAM:

Worthmore Furniture, Inc., of Richmond, Virginia, appeals from judgment against it in favor of Surlarnce C. Carney for damages, costs, and attorneys fees upon the finding of the District Court that Worthmore violated the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Federal Reserve Regulation Z, 12 C.F.R. 226, in connection with the sale to Carney of a food freezer. Specifically, the District Court found that Worthmore, at the time that it entered into a fixed-term consumer credit sales agreement with Carney, failed (1) to include in the disclosed finance charge a mandatory fee for a service policy assuring repair of the freezer for the duration of the credit arrangement and (2) to indicate clearly the proper number and amounts of payments necessary to retire the indebtedness.[1]

---

\* This case had originally been assigned to Bryan, Craven and Widener, JJ., but Judge Craven died on the day preceding the hearing date. Counsel agreed to a court panel consisting of Judges Bryan and Widener, with the understanding that if they disagreed, Judge Haynsworth would consider the appeal on the basis of the recorded tape of the arguments. There was no such disagreement and, consequently, Judge Haynsworth was not called into the case.

1. The requirement to disclose the finance charge and other pertinent attributes of the credit agreement is imposed by 15 U.S.C. § 1638, which provides, as here pertinent:

"(a) In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose each of the following items which is applicable:

\*　\*　\*　\*　\*　\*

(6) . . . the amount of the finance charge . . .

(7) The finance charge expressed as an annual percentage rate . . .

The facts, as stipulated in the District Court, are these:

Carney entered into a consumer credit transaction with Worthmore March 7, 1975 involving the purchase of a food freezer. A charge of $50.00 for a freezer service policy was added to the sales price of the freezer and included in the amount financed. Carney was required to purchase this policy, which was to last for fourteen months, the same number of months as the period over which Carney contracted to make payments. The policies in Worthmore's credit sales always last for a period of months equal to the number of months that the customer is obligated to make payments. Although the terms of this policy are nowhere set out in writing, Worthmore does repair or replace defective items during its term (in the instant case complementing a one-year "parts only" manufacturer's warranty on the freezer motor). The cost of the policy is a fixed sum based solely on the type of appliance and not on the length of the repayment period.

At least 98 percent of all Worthmore business in appliances involves credit sales covered by the Act. However, it was stipulated that Worthmore would offer testimony to the effect that there were cash sales of major appliances during 1975 and that such buyers were required to purchase the appropriate service policy. Nevertheless, Worthmore did not produce written contracts or other business records memorializing such sales and the concomitant imposition of service policies on cash customers. Additionally, Worthmore did not show how it would determine the duration of the service policy in the case of a cash appliance sale.

The written agreement between the parties, viewed objectively, required Carney to repay her total indebtedness of $536.12 to Worthmore in fourteen (14) monthly installments: thirteen (13) installments of $36.00 each, plus a fourteenth installment of $33.12. This aspect of Carney's obligation was disclosed in a somewhat ambiguous clause in the agreement:

"Purchaser hereby agrees to pay to [Worthmore Furniture, Inc.] at their offices shown above the "TOTAL OF PAYMENTS" shown above in 13 monthly installments of $36.00 (final payment to be $33.12) . . . ."

Blanks here and in the original are indicated by the underscoring and were filled in by hand.[2] Incidentally, the contract includes no credit property insurance purchased by Carney to cover loss of or damage to the freezer, because Worthmore did not sell or arrange the sale of such insurance for its customers.

Concluding that the cost of the service policy should have been included in the finance charge (an item different from the "amount financed", in which, as stipulated by the parties, this charge was included instead of in the finance charge) and that the contract's characterization of the repayment plan reasonably could have been read by Carney to require a total of only thirteen (13) payments, the District Court held Worthmore in violation of the Act, awarding double damages in the amount of $204.24, 15 U.S.C. § 1640(a)(1), as well as costs and $300.00 in attorney fees, 15 U.S.C. § 1640(a)(2).

### I. The Service Policy

Worthmore contends that the $50.00 freezer service charge was not an incident to the extension of credit and, in any event, was not a finance charge within the intent of the Act.

In this regard 15 U.S.C. § 1605 provides:

"(a) Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as

---

(8) The number, amount, and due dates or periods of payments scheduled to repay the indebtedness."

**2.** The original sales contract, as executed on the day of the sale, erroneously indicated "15 monthly installments . . . ." This error was picked up by a Worthmore employee. Thereafter Worthmore advised Carney that "13" was the proper entry on the contract, and the form was subsequently altered to reflect this change.

---

the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and *imposed* directly or indirectly *by the creditor as an incident to the extension of credit . . .*" (Accent added.)

Subsection 226.4 of Regulation Z, 12 C.F.R. 226.4, defines the finance charge in language virtually identical to that in the Act.

We are unable to agree with either component of Worthmore's argument. Its claim that the service policy is not an incident to the credit transaction might have more appeal if it were able to offer documented evidence of a substantial cash business in which identical charges for service policies were levied in each sales transaction. *See Manzina v. Publishers Guild, Inc.,* 386 F.Supp. 241 (S.D.N.Y.1974). However, where as here the alleged cash sales are insignificant exceptions to what is apparently a credit sales business, the naked claim that the service policy charge is imposed on cash customers is insufficient to acquit it as not incident to the extension of credit. *See Kriger v. European Health Spas, Inc.,* 363 F.Supp. 334 (E.D.Wis.1973); *Strompolos v. Premium Readers Service,* 326 F.Supp. 1100 (N.D.Ill.1971).

Finding that the instant service policy's imposition was inextricably intertwined with Worthmore's interest as a creditor, we decide that the cost of the freezer service policy was a finance charge of the type defined at 15 U.S.C. § 1605(a)(5), supra. Worthmore's failure to include this cost in the finance charge disclosure, 15 U.S.C. § 1638(a)(6), and the associated annual percentage rate, 15 U.S.C. § 1638(a)(7), was a violation of the Act rendering Worthmore liable for damages in Federal court, 15 U.S.C. § 1640(a), (e).

### II. The Number of Payments

Our affirmance on the issue of the freezer service policy charge makes it unnecessary to address the second issue, as the Act authorizes but one recovery for a given credit transaction regardless of the number of infractions compounded in it. *Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871, 880 (7 Cir. 1976); *Tinsman v. Moline Beneficial Finance Co.,* 531 F.2d 815, 819 (7 Cir. 1976); 15 U.S.C. § 1640(g).

Affirmed.