Betsy J. CAMPBELL, Plaintiff,

v.

GENERAL FINANCE CORPORATION OF VIRGINIA, Defendant.

Civ. A. No. 80–0034–C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

Sept. 16, 1981.

Scott W. Williams, Charlottesville, Va., for plaintiff.

Ralph E. Main, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

Plaintiff, Betsy J. Campbell, proceeding *in forma pauperis*, brings this action against the defendant, General Finance Corporation of Virginia (General Finance), alleging violations of the Truth-In-Lending Act, 15 U.S.C. § 1601, *et seq.*, 12 C.F.R. 226 and the Virginia Small Loan Act, Va.Code § 6.1–278 (1979 Repl. Vol., as in effect at that time). This court has jurisdiction pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337 to entertain plaintiff's federal claims and has pendent jurisdiction to hear plaintiff's state law claim under the doctrine espoused in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

General Finance is a corporation engaged in the business of extending small loans for which the payment of a finance charge is required. General Finance also acts as agent for an insurer or insurers in the selling of credit insurance to its customers. The defendant has performed both of these functions in the regular course of its business and has maintained an office in Charlottesville, Virginia, for those purposes. Mrs. Campbell resided in Charlottesville, Virginia, at all times relevant to this proceeding.

Plaintiff and defendant have enjoyed a business relationship for a number of years, with the defendant having extended credit to the plaintiff on various occasions. At some point prior to July, 1978, Mrs. Campbell declared bankruptcy, owing the defendant an outstanding balance of Five hundred and sixty-four and 52/100ths Dollars ($564.52). Plaintiff's debt to the defendant was discharged in the bankruptcy proceeding. Subsequently, on July 5, 1978, plaintiff obtained another loan from the defendant. As a condition to obtaining this loan, the plaintiff was required to reaffirm Two hundred and fifty-eight and no/100ths Dollars ($258.00) of the pre-bankruptcy debt she owed the defendants, but which had been discharged in bankruptcy. Plaintiff again, on March 5, 1979, sought a loan from the defendant. Defendant, as a condition

precedent to granting the loan, required Mrs. Campbell to reaffirm another One hundred and no/100ths Dollars ($100.00) of her debt to defendant that previously had been discharged in bankruptcy. Thus, on this occasion defendant loaned Mrs. Campbell Five hundred and fifty-eight and 73/100ths Dollars ($558.73), but required her to repay One hundred and no/100ths Dollars ($100.00) of that amount immediately. The defendant, as agent for the Old Republic Life Insurance Company sold to the plaintiff, in connection with the loan contract, a credit life insurance policy for a term of 24 months. As part of the same transaction, Mrs. Campbell gave General Finance a security interest in certain of her household goods as collateral for its loan to her. The defendant disclosed its security interest on the loan contract by making the following reference to a separate document:

Consumer Goods Listed on Such A bearing even date herewith.

The goods in which the defendant took a security interest were identified and described on a separate sheet of paper provided by the defendant and entitled—SCHEDULE "A" SECURITY LIST. It is as to this last loan transaction that plaintiff filed her complaint on February 25, 1980.

Originally, plaintiff alleged a number of claims concerning this last transaction, but subsequently dismissed all but three of them. Plaintiff seeks monetary damages and asks that the loan contract in question be declared void for the following reasons. First, the plaintiff asserts that the One hundred and no/100ths Dollars ($100.00) of the reaffirmed debt is a finance charge and that the defendant's failure to list it as such violated the disclosure requirements of the Truth-In-Lending Act, 15 U.S.C. § 1605, and Regulation Z, 12 C.F.R. § 226.4. Second, the plaintiff submits that the defendant further violated the Truth-In-Lending Act, 15 U.S.C. § 1639(a)(8) and 12 C.F.R. § 226.8(b)(5), by the manner in which they disclosed their security interest on the face of the loan contract. Lastly, the plaintiff complains that by requiring the plaintiff to reaffirm a debt discharged in bankruptcy as a condition to obtaining a new loan the defendant has contravened the Virginia Small Loan Act by assessing a prohibited charge in violation of Virginia Code § 6.1–278 (1979 Repl.Vol.). The defendant responded to plaintiff's claims by filing an answer, a motion to dismiss for failure to state claim, and counterclaimed for payment of a note executed by the plaintiff on July 26, 1979. Plaintiff followed by filing a motion to dismiss the counterclaim and finally both parties submitted the case to the court on cross-motions for summary judgment. The court heard oral argument on June 22, 1981, and now finds the case ripe for disposition.

Congress clearly established as the cornerstone of the Truth-In-Lending Act the requirement of full disclosure by creditors of all meaningful credit information to the consumer. Full disclosure implements the goals of this consumer protection act by (1) promoting standardized credit terms, (2) prohibiting false or fictitious charges, and (3) promoting the "informed use of credit". 15 U.S.C.A. § 1601; 12 C.F.R. § 226.1(a)(2); *Powers v. Sims and Levin Realtors*, 396 F.Supp. 12, 16–17 (E.D.Va.1975), *aff'd in part, reversed on other grounds*, 542 F.2d 1216 (4th Cir. 1976). The Fourth Circuit has stated that the Truth-In-Lending Act must be given a broad, liberal construction, not a technical, narrow one. *White v. Arlen Realty and Development Corporation*, 540 F.2d 645 (4th Cir. 1975); *Mason v. General Finance Corporation of Virginia*, 401 F.Supp. 782, 785 (E.D.Va.1975), *aff'd in part, rev'd on other grounds*, 542 F.2d 1226 (4th Cir. 1976).

For the requirements of the Truth-In-Lending Act to be involved, there must be (1) a creditor, (2) a debtor who is a natural person, and (3) a consumer credit transaction. *Tom Benson Chevway Rental and Leasing, Inc. v. Allen*, 571 S.W.2d 346, 349 (Tex.Civ.App.1978), *cert. den.* 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979). Mrs. Campbell's two Truth-In-Lending claims meet these prerequisites.

For the purpose of Mrs. Campbell's two claims under Truth-In-Lending and Regula-

tion "Z", defendant is self-admittedly a "creditor" as defined by 15 U.S.C.A. § 1602(f) and 12 C.F.R. § 226.2(m). See defendant's answer to plaintiff's Interrogatory No. 5. Mrs. Campbell is obviously a "person" and "customer" as defined by 15 U.S.C.A. § 1602(d) and 12 C.F.R. § 226.2. Therefore, defendant is subject to all the applicable disclosure requirements of the Truth-In-Lending Act.

15 U.S.C. § 1605(a) of the Truth-In-Lending Act, as amended, defines the term "finance charge" as the "sum of all charges, payable directly or indirectly, by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." Regulation Z defines the term "finance charge" as the "cost of credit determined in accordance with § 226.4 of the regulation". 12 C.F.R. § 226.2(w). Section 226.4 provides that:

> [T]he amount of the finance charge in connection with any transaction shall be determined as a sum of all charges, payable directly or indirectly by the customer, and imposed, directly or indirectly, by the creditor as an incident to or as a condition of the extension of credit, whether payable by the customer, the seller, or any other person on behalf of the customer to the creditor or a third party.

■ Regulation Z provides examples of charges that are and are not finance charges. 12 C.F.R. § 226.4(a)–(b). For example, insurance required to be bought by the borrower as a condition of credit is a finance charge. The defendant argues that the One hundred and no/100ths Dollars ($100.00) of reaffirmed debt is includable as an amount financed and not as a finance charge. In support of this contention, the defendant points out that the reaffirmation of a debt discharged in bankruptcy as a condition to obtaining a loan is not listed as an example of a finance charge under either 15 U.S.C. § 1605(a)–(e) or 12 C.F.R. § 226.4(a)–(i). It is not necessary, however, that this particular incident be listed as a finance charge in order to be held to be one.

This is neither required by the statute or regulation nor does it comport with the purpose of the Act or the broad interpretation given it by the Fourth Circuit Court of Appeals. *White v. Arlen Realty and Development Corporation*, 540 F.2d 645 (4th Cir. 1975). Even if the charge or payment does not fall squarely into one of the six listed categories, it may still be a finance charge if the payment is required by the lender as an incident to or a condition for granting the loan. *Carney v. Worthmore Furniture*, 561 F.2d 1100 (4th Cir. 1977). Appendix A of Regulation Z repeats that the finance charge is "the total of all costs which . . . [a] . . . customer must pay directly or indirectly for obtaining credit".

■ Contrary to the defendant's assertion that a discharge in bankruptcy is merely a defense to a creditor's suit, the discharge of a debt in bankruptcy releases a debtor from any legal duty to repay the debt. Discharged debts therefore enjoin any creditor whose credit extensions were so discharged from collecting on the debt by legal process. 11 U.S.C. § 32(f) provides:

> An order of discharge shall: (1) declare that any judgment therefore or thereafter obtained in any other court is null and void as a determination of the personal liability of the bankrupt with respect to any of the following [debts] and . . . (2) enjoin all creditors whose debts are discharged from instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.

A debt discharged in bankruptcy is therefore uncollectable by legal process. However, the debt may be again rendered legally enforceable if the debtor reaffirms it to the creditor. *Collier on Bankruptcy*, § 17.33 (14th Ed.).

Therefore, when a credit customer reaffirms a debt at the request of General Finance, a legally enforceable obligation against him or her is created which previously did not exist. In this case, the additional, now enforceable legal obligation of a borrower arising from reaffirmance is clearly a "cost" of the new loan granted by

General Finance. This "cost" is exacted as "an incident to or as a condition of" the grant of credit as specified in 12 C.F.R. § 226.4. Unless Mrs. Campbell agreed to reaffirm, General Finance would not have offered her a loan. According to defendant's answer to Interrogatory No. 23,

> Jack Chaplin [manager of the defendant's local office] told her that payment [of part of the bankrupted debt] would be required before a loan could be made.

It is interesting to note that the new Bankruptcy Act, which went into effect October 1, 1979, has added protective measures that effectively prevent creditors from requiring reaffirmation as a condition to obtaining credit after bankruptcy.[1]

A "tying relationship" between the imposition of a charge and the extension of credit renders the former a finance charge. *Mondik v. DiSimo*, 386 F.Supp. 537 (W.D. Pa.1974). The major question in determining whether a charge is a "finance charge" required to be disclosed under the Truth-In-Lending Act is whether the seller refuses to extend credit unless the consumer agrees to pay the charge. *Berryhill v. Rich Plan of Pensacola*, 578 F.2d 1092 (5th Cir. 1978). Defendants told Mrs. Campbell that payment of the discharged debt would be required before a loan would be made. Therefore, under *Mondik* and *Berryhill*, the condition of reaffirmance was clearly a finance charge.

The Fourth Circuit held in *Carney v. Worthmore Furniture*, 561 F.2d 1100 (4th Cir. 1977), that a "service policy" mandatorily imposed upon the customer in connection with the sale of a food freezer was a finance charge. The court said that the condition (the service policy) and the extension of credit for the sale of the freezer,

> inextricably intertwined with the furniture dealer's interest as a creditor ...

561 F.2d at 1103, and the cost of the service policy was therefore a finance charge and required disclosure.

Additionally, it has been stated that the assumption by a borrower of the pre-existing debt of another as a condition for obtaining a loan results in a "cost" or "charge" that must be disclosed as a finance charge under the Truth-In-Lending Act. *Campbell v. Liberty Financial Planning*, 422 F.Supp. 1386 (1976). No reason would appear to exist why a different result should obtain when a borrower is required to assume his own discharged debt. In both cases, the borrower, as a condition of credit, is being saddled with an obligation he or she previously did not have.

Case law provides several examples of the type of costs that have been required to be disclosed as a finance charge under the Truth-In-Lending Act: mandatory service contracts, *Carney v. Worthmore Furniture*, 561 F.2d 1100 (4th Cir. 1977); delivery charges, *Mondik v. DiSimo*, 386 F.Supp. 537 (W.D.Pa.1977); service contract or membership fee, *Berryhill v. Rich Plan of Pensacola*, 578 F.2d 1092 (5th Cir. 1978); and notary fees not mandatory under state law, *Buford v. American Finance Co.*, 333 F.Supp. 1243, 1247 (D.Ga.1971). The *Buford* court explained that "only those charges specifically exempted from inclusion in the finance charge by statutes or regulations may be excluded from it [the finance charge] ..." *Id.* at 1247. Reaffirmed debts are not such an excludable charge under any statute or regulation.

1. 11 U.S.C. § 524 provides that an agreement in which reaffirmation is even partially the consideration (for example, a loan agreement where the creditor advances additional funds), is enforceable only if:

(1) The agreement is made prior to discharge;

(2) The debtor has not exercised the 30-day right to rescind given by the Act to every individual entering into a reaffirmation agreement; and

(3) In all cases where the debt was not secured by real property of the debtor, the court approves the agreement as either (a) not imposing undue hardship and (b) in the debtor's best interest, or a good faith settlement of litigation as to an objection to discharge, or an agreement providing for redemption of secured property.

11 U.S.C. § 524(c).

Furthermore, before the court approves such an agreement, the Act provides that at the discharge hearing, the court must inform the debtor that the agreement is not required, and of the possible consequences of the agreement. 11 U.S.C. § 524(d).

Defendant cannot reasonably argue that the reaffirmation of a discharged debt by the applicant for a new loan is not an "incident to the extension of credit" because the reaffirmation and the grant of the new loan are independent transactions. This sort of argument in the present case is no more than the kind of "semantic posturing" referred to by the Court in *Campbell, supra*, when it rejected the claim that the borrower's assumption of the balance of his mother's loan was not an incident to the grant of the borrower's own loan. The contention that the reaffirmation is a wholly separate transaction is contradicted by the defendant's plain answer to Interrogatory No. 23 that states the repayment was necessary to get the new loan.

Nor can the defendant assert that the reaffirmed debt, as an incident to the grant of a new loan, is governed by 12 C.F.R. 226.8(j) of Regulation Z relating to "Refinancing, consolidating or increasing" an existing extension of credit. As stated before, a debt discharged in bankruptcy no longer legally "exists" and cannot be collected by the legal process; any judgment respecting such a debt is void in term of the personal liability of the Bankrupt. 11 U.S.C. § 32(f). Thus, a discharged debt cannot be an "existing extension of credit"

within the meaning of 12 C.F.R. 226.8(j), and thereby escape disclosure.

■ This exact issue was addressed by an Administrative Law Judge (ALJ) in *In The Matter of Household Finance Corporation*, [1974–1980 Transfer Binder] Cons.Credit. Guide (CCH) ¶ 997, 788. The ALJ held that by including the amount of the reaffirmed debt previously discharged in bankruptcy under the "amount financed" rather than under the "finance charge", in cases where discharged debtors apply for and are granted new loans by respondent provided that they reaffirm their discharged debts in whole or in part, Household Finance has failed to disclose accurately the "finance charge" and has thereby violated the Truth-In-Lending Act and Regulation Z. This court is in agreement with the reasoning of the ALJ's Initial Decision and holds that it is equally applicable to the instant case. The defendant's failure to list the amount of reaffirmed debt as a finance charge on the loan contract violates the disclosure requirements of the Truth-In-Lending Act, 15 U.S.C. § 1605, and Regulation Z, 12 C.F.R. § 226.4.

■ Plaintiff next contends that defendant violated the Truth-In-Lending Act, 15 U.S.C. § 1639(a)(8) [2] and 12 C.F.R. § 226.-8(b)(5),[3] by failing properly to disclose its

2. 15 U.S.C. § 1639

(a) Any creditor making a consumer loan or otherwise extending consumer credit in a transaction which is neither a consumer credit sale nor under an open end consumer credit plan shall disclose each of the following items, to the extent applicable:

(8) A description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates.

(b) Except as otherwise provided in this part, the disclosures required by subsection (a) of this section shall be made before the credit is extended, and may be made by disclosing the information in the note or other evidence of indebtedness to be signed by the obligor.

3. 12 C.F.R. § 226.8 (Reg. Z)

(b) Disclosures in sale and nonsale credit. In any transaction subject to this section, the following items, as applicable, shall be disclosed.

(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clear-

security interest in Mrs. Campbell's household goods on the face of the loan contract. As discussed above, General Finance, in the space provided on the loan contract for the listing of the items in which the defendant was taking a security interest, made the following reference to a separate document:

Consumer Goods Listed on Sch A bearing even date herewith

instead of listing the secured property on the loan contract itself. The goods in which the defendant took a security interest were identified and described on a separate sheet of paper provided by the defendant, signed by the plaintiff, and entitled—SCHEDULE "A" SECURITY LIST. Specifically, the plaintiff alleges that the defendant failed to list the goods in which it was taking a security interest on the loan contract, despite the fact that there was sufficient room on the contract for a proper listing, and furthermore that the defendant never intended to list the secured items on the space provided on the contract for Mrs. Campbell or any other customer. In support of these claims, plaintiff submits, respectively, a copy of the loan contract in which plaintiff has typed in a list of the secured items in the space provided and an internal memorandum which the defendant sent its employees on March 10, 1975, which suggests that the defendant, as a matter of course, never list the secured items on the loan contract itself, but, as in the instant case, make reference to a separate document.

Simply stated, the law requires the defendant to list those items in which it is taking a security interest on the loan contract itself, except, "where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification ..." 12 C.F.R. § 226.8(b)(5). Plaintiff cites Seventh and Third Circuit cases that interpret Regulation Z as requiring,

that complete disclosure be accomplished on one side of one document without ref-

erences to separate documents unless a full identification of the property cannot be properly made on the disclosure statement due to the length of such identification.

*Bulger v. Thorp Credit, Inc.* and *Baughman v. ITT Thorp Corp.*, 609 F.2d 1255 (7th Cir. 1979); *See also Gennuso v. Commercial Bank and Trust Co.*, 566 F.2d 437 (3rd Cir. 1977). This court finds that due to the very limited amount of space on the loan contract for the listing of secured items, and due to the number of items in which a security interest was taken, a full and clear identification of the property could not reasonably be made on the disclosure statement. The question of whether this defendant would fail properly to list the secured goods of another customer, where there was sufficient space to do so, is not a case or controversy properly before this court. The court further finds that plaintiff has failed to produce sufficient evidence to prove its allegation that the defendant never considers, when filling out a new loan agreement, whether to list the secured items on the agreement itself, but rather routinely identifies them on a separate document. In the case at bar, due to the number of goods in which a security interest was taken, there was not sufficient space in which to identify the secured goods as fully and as clearly as they were in the attached SCHEDULE "A" SECURITY LIST. Accordingly, the defendant has not violated the disclosure requirements of the Truth-In-Lending Act or Regulation Z by failing to list their security interest on the face of the loan contract, the facts in this case bringing it within the final, qualifying clause in the interpretation of Regulation Z quoted *supra*.

■ Lastly, plaintiff complains that General Finance, in requiring plaintiff to reaffirm One hundred and no/100ths Dollars ($100.00) of her discharged debt in order to obtain the new loan, assessed a prohibited charge in violation of the Virginia Small

---

ly set forth in conjunction with the description or identification of the type of security interest held, retained, or acquired.

Loan Act, Virginia Code § 6.1–278 (1979 Rep.Vol.).[4] The Virginia Small Loan Act is a statutory mechanism designed to regulate consumer credit in Virginia. Virginia Code § 6.1–271 gives the State Corporation Commission (SCC) the power to set the maximum rates of charge. § 6.1–277 sets forth the method by which such charges are to be applied to the principal to produce the total amount financed. § 6.1–278 prohibits any other forms of consideration to be charged "directly or indirectly" for the loan, beyond those officially authorized by the SCC. Virginia Code § 6.1–278 (1979 Repl.Vol.), states in pertinent part:

> In addition to the charges herein provided for, no further or other amount whatsoever for any examination service, brokerage, commission, fine, notarial fee, recordation fee or other thing or otherwise shall be directly or indirectly charged, contracted for, or received.

Virginia case law has yet to comment on its additional prohibited charge statute, but other states have found the following examples to constitute prohibited charges under these statutes: a title fee (*Kennesaw Finance Co. v. Mirabelli*, 143 Ga.App. 254, 238 S.E.2d 256 (1977); a repossession fee (Op. of Md. Atty. General, Oct. 1969, CCH Guide ¶ 99,867); and the assumption of a pre-existing debt (*Campbell v. Liberty Financial Planning*, 422 F.Supp. 1386 (D.C. Neb.1976).

Plaintiff asserts that the defendant, by including the amount of reaffirmed debt (indirect charge) as principal, has artificial-ly inflated the amount of principal. Consequently, by charging the maximum rate of interest allowed by law for the artificially inflated amount of principal, the defendant has created a scheme that enables it to exact an illegal return on the true amount of principal. The defendant assessed Mrs. Campbell the maximum finance rate on the loan in the amount of One hundred and ninety-two and 68/100ths Dollars ($192.68). Any additional consideration required by the defendant violates § 6.1–278 and renders the entire contract void. The court has found that Mrs. Campbell would not have received the loan had she not reaffirmed. In consideration for the loan, the defendant exacted the maximum rate of charge on a total amount consisting of the principal amount of the loan plus the amount of the reaffirmed debt. The defendant's mechanism here is a clear violation of § 6.1–278. The court's holding here is consistent with its earlier findings that a debt discharged in bankruptcy does not leave the creditor with a legally enforceable right and that the amount of reaffirmed debt should have been included as a finance charge for purposes of the Truth-In-Lending Act.

■ The defendant's counterclaim for Six hundred and eighteen and 87/100ths Dollars ($618.87) arises out of an alleged debt occurring as a result of plaintiff's default on a note executed by the plaintiff, in favor of the defendant, on July 26, 1979. Under Fed.R.Civ.P. 13(b), the defendant's counterclaim is permissive because it does

---

**4.** Virginia Code § 6.1–278 (1979 Repl.Vol.)

Additional charges prohibited.—In addition to the charges herein provided for no further or other amount whatsoever for any examination service, brokerage, commission, fine, notarial fee, recordation fee or other thing or otherwise shall be directly or indirectly charged, contracted for or received. If any amount other than or in excess of the charges permitted by this chapter is charged, contracted for, or received, except as the result of an accidental and bona fide error of computation which was not made pursuant to a regular course of dealing, the contract of loan shall be void, and the licensee shall have no right to collect or receive or retain any principal, or charges whatsoever and any amounts paid on account of principal or interest shall be recoverable by the person by or for whom payment was made; and the licensee and the several members, officers, directors, agents and employees thereof who participated in the violation shall be guilty of a misdemeanor and upon conviction shall be punishable by a fine of not more than five hundred dollars and not less than fifty dollars, or by imprisonment of not more than six months, or by both, in the discretion of the court or jury. The provisions of this section shall not prohibit a licensee from charging a five-dollar processing fee for each check returned to the licensee because the drawer had no account or insufficient funds in the payor bank.

not arise out of the transaction or occurrence that is the subject matter of plaintiff's claim. The Fourth Circuit had held that permissive counterclaims must have an "independent jurisdictional base" in order to be considered by a federal district court. *Sue and Sam Mfg. Co. v. B–L–S Const. Co.*, 538 F.2d 1048, 1051 (4th Cir. 1976). There being no "independent jurisdictional base" to hear defendant's counterclaim, this court must decline to consider it.

The court, finding no defense available to the defendant under 15 U.S.C. § 1640(b)(c) or (f), awards the plaintiff twice the amount of the finance charge, which award this court finds to be Five hundred and eighty-five and 36/100ths Dollars ($585.36), plus costs and reasonable attorneys' fees for the defendant's violations of the Truth-In-Lending Act. The court further awards the plaintiff the recovery of all sums already paid the defendant in connection with the March 5, 1979, loan transaction and declares the said loan contract void in accordance with Virginia Code § 6.1–278 (1979 Repl. Vol.).

An appropriate Order will accompany this Memorandum Opinion.